# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1552

_____

United States of America

*Plaintiff - Appellee*

v.

Terry L. Harlan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 20, 2015
Filed: February 16, 2016

_____

Before RILEY, Chief Judge, BEAM and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

A jury found Terry Lee Harlan, a Native American man, guilty of domestic assault in Indian country by an habitual offender in violation of 18 U.S.C. § 117. The

district court[1] sentenced Harlan to 41 months imprisonment. Harlan appeals his conviction and sentence. With jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND[2]

Harlan lived with his girlfriend Marlene Freemont, a Native American woman, in his trailer home on the Omaha Indian Reservation. Freemont moved out for two weeks early in 2014 and spent some time with another man. When Harlan and Freemont got back together in March, Freemont lied about seeing another man for fear Harlan would hit her. Harlan, who earlier had seen Freemont with the man, got mad about the lie and hit the windshield of the car he and Freemont were sitting in.

On March 6, 2014, the evening Freemont returned, she and Harlan drank beer together and Freemont, a long-time methamphetamine user, got high. Harlan eventually went to bed, but Freemont stayed up all night drinking beer into the next day. Harlan stayed sober for a while the next day, but began drinking with Freemont again in the evening. Both were drunk by 8:00 p.m., and Freemont was still high on meth from the day before.

Harlan's sister, Andrea Harlan, and Harlan's thirteen-year-old daughter, K.H., joined the couple at the trailer later that night. Harlan and Freemont adjourned to the bedroom to keep drinking and watch television. Harlan got mad when Freemont mentioned the other man she dated and pushed Freemont into the closet with both hands. Despite Freemont's pleas for Harlan to stop, he grabbed her by the hair and struck her face and head about eight times. Freemont fell to the floor, and Harlan kicked her body twice.

---

[1] The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

[2] "We present the facts in the light most favorable to the jury's verdict." United States v. Fuller, 557 F.3d 859, 862 (8th Cir. 2009).

When Harlan stopped, Freemont reached for her shoes and sweater so she could leave, but Harlan tossed them aside and began hitting her again, asking whether she intended to see another man. Harlan then ordered Freemont to lay on their bed while he went to sleep. After Harlan passed out, Freemont left the trailer to report the beating to the police. On her way out, Freemont asked Andrea if she had seen Freemont's sweater. She had not, so, despite the cold weather, Freemont left the trailer wearing only a short-sleeved shirt and sweat pants. As she left, Freemont told Andrea to tell Harlan that Freemont was going to report what Harlan had done.

No one was at the police station when Freemont arrived. She was able to flag down an officer from a nearby town who contacted Omaha Nation Law Enforcement Services, the department with jurisdiction over assaults between Native Americans on the reservation. Officer William Webster responded and took Freemont's statement and examined her injuries. Officer Webster called an ambulance so a member of the rescue squad could evaluate Freemont's injuries and arranged for Freemont to spend the night in jail to sleep off her substantial intoxication.

After her release early the next morning, Freemont sought treatment at Indian Health Services Hospital in Winnebago, Nebraska, reporting she had been assaulted. Physician assistant Carmel Berglin, who has extensive experience treating assault victims, examined Freemont. Freemont told Berglin that Harlan punched her in the face and chest and grabbed her right arm.

Berglin observed multiple contusions, including a bruise over Freemont's right cheek bone, and tenderness on Freemont's face and head. Berglin also noted a large contusion on Freemont's forearm, a bruise on her chest, and tenderness along her ribs.

After the assault, Freemont stayed with her mother. When Freemont did return to the trailer to see Harlan, he told her he was sorry and would not hit her again, but there was nothing he could do about what he had done.

On June 18, 2014, a grand jury charged Harlan with domestic assault in Indian country by an habitual offender. See 18 U.S.C. § 117. The indictment charged that Harlan had multiple prior convictions for domestic assault, including, as relevant here, a 2002 tribal-court conviction for simple assault and a 2003 federal conviction for assault resulting in serious bodily injury. On October 27, 2014, Harlan filed a motion in limine challenging the admissibility of his 2002 tribal-court conviction.[3] Harlan argued the prior conviction was for attempt, not assault. The district court denied the motion.

Harlan's jury trial began on November 17, 2014. The government first called Freemont, who described the assault in vivid detail. Berglin testified Freemont's injuries were entirely consistent with her description of the assault. On cross-examination, Berglin opined some—but not all—of Freemont's injuries could have resulted from a fall.

---

[3]In support of his motion in limine, Harlan entered into the record Omaha Tribal Code § 5-4-4(a) (2013), which states, in relevant part, "A person is guilty of simple assault if he . . . attempts to cause or purposely, knowingly, or recklessly causes bodily injury to another; or . . . attempts by a show of force or violence to put another in fear of imminent serious bodily injury." When asked at oral argument why the record did not include the 2002 version of the tribal statute under which Harlan pled guilty, Harlan explained the Tribal Code was revised in 2003 and he was unable to find the 2002 version. Relying on the alignment between the language in the charging documents and the current version of § 5-4-4, Harlan maintains the statutes were renumbered but the elements of simple assault did not change. We accept the parties' use of the record version.

The government next called Freemont's sister Delilah Freemont (Delilah), who had an intimate relationship with Harlan more than a decade earlier. While they were together, Harlan assaulted Delilah multiple times. Over Harlan's renewed objection, the district court admitted three exhibits showing two of Harlan's prior assault convictions. Exhibits 1 and 2 described Harlan's 2003 federal conviction for assaulting Delilah and causing serious bodily injury. Exhibit 3 documented Harlan's 2002 tribal-court conviction for simple assault on Delilah. After briefly acknowledging her past relationship with Harlan, Delilah stated that a week after the assault on Freemont, Delilah observed injuries on Freemont consistent with Freemont's description of the assault.

Harlan's sister Andrea testified that on the night of the charged assault, she returned to the trailer where she lived with Harlan and Freemont. Andrea stated she and K.H. watched television in the living room when Harlan and Freemont went to the bedroom. Both Harlan and Freemont were drinking alcohol, and Harlan needed help to the bedroom because he was physically impaired by the alcohol. Andrea soon heard arguing. When she went to the bedroom to investigate, Andrea learned Harlan was mad because Freemont would not go to bed and let him sleep.

Andrea denied hearing anything suggesting a physical struggle, assault, or someone falling down. Andrea testified Freemont later came out of the bedroom asking for a sweater, but left without one when Andrea told her she did not have one. Andrea did not notice any bleeding or other signs of a fight when Freemont left the trailer and testified Freemont did not mention any injuries and did not ask for any help. Freemont did not return, but the police arrived thirty to forty minutes later to investigate.

K.H. testified next. K.H. observed Harlan and Freemont drinking and talking at the kitchen table the night of the assault. Shortly after K.H. helped Harlan to the bedroom, K.H. heard yelling and went to the bedroom to see what was happening.

K.H. asked Harlan, who appeared to be mad, why he was yelling, and he replied Freemont would not let him sleep.

K.H. made at least two or three trips to the bedroom to investigate the yelling. At one point, K.H. observed Harlan sitting on the bed with Freemont standing nearby. When Harlan moved, Freemont raised her hands to defend herself. K.H. asked why she reacted that way, and Freemont replied she thought Harlan was going to hit her as he had before. K.H. never saw a physical altercation between Harlan and Freemont and did not hear anyone falling down. K.H. did observe Freemont crying, but Freemont explained she was sad about a friend who died. K.H. did not think Freemont looked like she was hurt. Like Andrea, K.H. recalled Freemont later asking for a sweater and leaving the trailer without a sweater even though it was cold. K.H. stated the police arrived about thirty minutes after Freemont left.

Officer Webster testified he took a report from Freemont the night of the assault. Recalling Freemont was not dressed appropriately for the cold weather that night, Officer Webster testified she appeared to be intoxicated and afraid. Freemont told Officer Webster that Harlan had assaulted her, and showed him the injuries to her right cheek and forehead. After taking Freemont to jail and arranging for a medical evaluation, Officer Webster went to Harlan's trailer. Visibly intoxicated, Harlan denied having a physical altercation with Freemont, and Officer Webster did not see any marks on Harlan's hands. Officer Webster arrested Harlan, who needed assistance to walk to the squad car.

The government entered certain factual stipulations about Harlan's prior convictions and his trailer's location in Indian country before resting its case. Harlan did not testify or call any witnesses. On November 19, 2014, the jury found Harlan guilty.

-6-

Before sentencing, Harlan moved for a sentence below the advisory United States Sentencing Guidelines (Guidelines) range based on his poor physical health.[4] The government resisted the motion, highlighting Harlan's history of assaultive conduct and observing his health problems did not prevent him from getting drunk and assaulting Freemont.

After reviewing Harlan's brief and hearing the parties' arguments, the district court denied Harlan's motion. Troubled by Harlan's failure to accept responsibility for the assault and his lack of remorse for hurting Freemont, the district court sentenced Harlan to 41 months—the bottom of the advisory Guidelines range. Harlan appeals, challenging the admission of his tribal-court conviction, the sufficiency of the evidence, and his sentence.

## II.     DISCUSSION

### A.     Harlan's Tribal-Court Conviction

Section 117(a)(1) provides in relevant part,

> Any person who commits a domestic assault within . . . Indian country and who has a final conviction on at least 2 separate prior occasions in Federal, State, or Indian tribal court proceedings for offenses that would be, if subject to Federal jurisdiction . . . *any assault*, sexual abuse, or serious violent felony against a spouse or intimate partner . . . shall be fined under this title, imprisoned for a term of not more than 5 years, or both.

(Emphasis added). Over Harlan's objection, the district court admitted evidence that in 2002, Harlan pled guilty in tribal court to assaulting Delilah in Indian country

---

[4]Harlan suffers from a number of health problems, including diabetes, hypertension, end-stage renal disease, coronary artery disease, congestive heart failure, cerebral palsy, and anemia chronic disease. He needs dialysis several times per week and takes a long list of medications.

while they were in an intimate relationship. The district court concluded the phrase "any assault" in § 117(a)(1) unquestionably included Harlan's simple-assault conviction under the tribal code. Harlan argues the district court erred in admitting his 2002 tribal-court conviction based on an erroneous interpretation of 18 U.S.C. § 117(a)(1).[5]

We review de novo issues of statutory interpretation. See, e.g., United States v. Woodard, 694 F.3d 950, 953 (8th Cir. 2012); United States v. Boaz, 558 F.3d 800, 806 (8th Cir. 2009). "We review the district court's evidentiary rulings, including its rulings on motions in limine, for an abuse of discretion." United States v. Parish, 606 F.3d 480, 486 (8th Cir. 2010).

Harlan contends the district court abused its discretion in denying his motion in limine and admitting evidence of his 2002 simple-assault conviction as a predicate offense for § 117(a)(1) because, in Harlan's view, a closer examination of the charging documents reveals Harlan pled guilty to a charge of "Attempt and not [actual] Assault." Pointing to language in the criminal complaint stating he "attempt[ed] to cause bodily injury" to Delilah Freemont, Harlan asserts "prior convictions for Attempt cannot be used as predicate offenses to fulfill the necessary elements to prove a violation of 18 U.S.C. § 117." Harlan misunderstands the nature of criminal assault.

---

[5]On December 14, 2015, the United States Supreme Court granted certiorari to consider "whether reliance on valid uncounseled tribal-court misdemeanor convictions to prove Section 117(a)'s predicate-offense element violates the Constitution." See United States v. Bryant, 769 F.3d 671, 673 (9th Cir. 2014), cert. granted, No. 15-420, 2015 WL 5822186 (U.S. Dec. 14, 2015). We have held it does not. See United States v. Cavanaugh, 643 F.3d 592, 594 (8th Cir. 2011); accord United States v. Shavanaux, 647 F.3d 993, 998 (10th Cir. 2011). The Ninth Circuit recently decided it does. See Bryant, 769 F.3d at 673. That issue is not before us because Harlan did not raise the issue on appeal.

In construing § 117(a), we start with "the language employed by Congress." Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979). Neither § 117 nor any other provision of the chapter where § 117 resides defines the term "assault." See 18 U.S.C. ch. 7. "[W]here a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." United States v. Turley, 352 U.S. 407, 411 (1957). "'Common law assault embraces two different crimes: [(1)] attempted battery, that is, an intended effort to cause bodily harm to another which falls short of success . . . regardless of whether the intended victim knows of the attempt,'" and (2) any "act which is intended to, and reasonably does, cause the victim to *fear* immediate bodily harm; such 'menacing' constitutes assault even if no physical harm is attempted, achieved, or intended." United States v. Olson, 646 F.3d 569, 573-74 (8th Cir. 2011) (alteration omitted) (quoting United States v. Lee, 199 F.3d 16, 18 (1st Cir. 1999)).

The offense underlying Harlan's 2002 tribal-court conviction for simple-assault readily fits the first part of the common-law definition. See Anderson v. Crawford, 265 F. 504, 507 (8th Cir. 1920) ("While a battery always included an assault, assaults often fall short of a battery. An assault is an attempt, which, if consummated, would result in a battery."). The district court did not err in denying Harlan's motion in limine and in allowing the government to use his simple-assault conviction as a predicate offense under § 117(a).

B.     Sufficiency of the Evidence

Harlan next contends the evidence was inconsistent and insufficient to convict him of assaulting Freemont in violation 18 U.S.C. § 117. Questioning Freemont's perception, memory, and credibility, Harlan emphasizes (1) Freemont was under the influence of drugs and alcohol; (2) Berglin testified some of Freemont's injuries possibly could have come from a fall; (3) Harlan was "drunk and disabled" and had no marks on his hands; and (4) Andrea and K.H. did not see the assault or any injuries before Freemont left the trailer. According to Harlan, "[s]uch facts could easily lead

a reasonable jury to conclude that the injuries [Freemont] sustained were due to multiple falls into fixed, hard objects, as opposed to the result of an assault committed by Harlan."

That may be true, but it is not the proper inquiry on appeal. The question we must answer is not whether the jury could have reasonably decided the case differently, but whether "no reasonable jury could have found [Harlan] guilty beyond a reasonable doubt." United States v. Carlson, 787 F.3d 939, 943 (8th Cir. 2015). In deciding that question, we view the "evidence in the light most favorable to the jury's verdict, resolv[e] conflicts in the government's favor, and accept[] all reasonable inferences that support the verdict." United States v. Dunn, 723 F.3d 919, 924 (8th Cir. 2013). "We do not weigh the evidence or the credibility of the witnesses." United States v. Honarvar, 477 F.3d 999, 1000 (8th Cir. 2007). "[T]he jury has sole responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict." United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006).

In that light, the evidence adduced at trial was more than sufficient to support the jury's guilty verdict. Despite her intoxication, Freemont provided the jury with a detailed account of the altercation she had with Harlan, the beating he gave her, and the injuries he inflicted. Leaving the trailer when Harlan fell asleep, Freemont promptly reported the assault to Officer Webster, who testified Freemont appeared to be afraid. Officer Webster verified Freemont's reported injuries and investigated the assault. As soon as she could, Freemont sought treatment at the hospital. Berglin testified Freemont's injuries to her head, face, chest, ribs, and arm were entirely consistent with Freemont's report that Harlan punched her about eight times, grabbed her right arm, and kicked her while she was down. Although no one else witnessed the actual assault, testimony from Andrea and K.H. also bolstered Freemont's account. Both Andrea and K.H. heard Harlan yelling at Freemont for a long period of time. K.H., who went back to the bedroom several times to investigate, testified

-10-

that when Harlan moved, Freemont raised her hands to defend herself, explaining she was afraid Harlan would hit her again. It was reasonable for the jury to credit Freemont's corroborated testimony and find Harlan guilty of domestic assault.

### C.    Substantive Reasonableness

Harlan last argues his sentence was substantively unreasonable because the district court did not vary downward "from the advisory guidelines range for Harlan's various serious health problems." We review the substantive reasonableness of a sentence for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Miner, 544 F.3d 930, 932 (8th Cir. 2008). Harlan's within-Guidelines sentence is presumptively reasonable. See Gall, 552 U.S. at 51. Harlan fails to rebut that presumption.

Harlan acknowledges the district court considered his myriad health problems in imposing his sentence, but complains the district court should have given more weight to that factor. "The fact the district court did not give [Harlan's health problems] as much 'weight' as [Harlan] would have preferred does not justify reversal." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009). "The district court has wide latitude to weigh the [18 U.S.C.] § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." Id.

Here, the district court sentenced Harlan at the bottom of the Guidelines range after considering various factors such as Harlan's health, his history of criminal assault, the seriousness of domestic violence, Harlan's failure to accept responsibility for his actions, and his lack of remorse for harming Freemont. "'[T]he court carefully explained the reasons for its sentence and its refusal to vary downward, and we see

-11-

no indication that the court improperly weighed the sentencing factors.'" <u>United States v. Wanna</u>, 744 F.3d 584, 589 (8th Cir. 2014) (quoting <u>United States v. Von Crutcher</u>, 529 F. App'x 802, 803 (8th Cir. 2013) (unpublished per curiam)). Harlan's sentence is substantively reasonable.

## III. CONCLUSION

We affirm Harlan's conviction and sentence.

_____