# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1325

_____

United States of America,

*Plaintiff - Appellee,*

v.

Calvin Bernhardt,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: February 15, 2018
Filed: September 12, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

COLLOTON, Circuit Judge.

A jury convicted Calvin Bernhardt of several federal offenses: attempted exploitation of a child, attempted receipt of images depicting sexual exploitation of a child, possession of counterfeit obligations, two counts of attempted witness

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

tampering, and attempted travel with intent to engage in illicit sexual conduct. The district court sentenced Bernhardt to a total of 600 months' imprisonment. On appeal, Bernhardt challenges four counts of conviction and argues that his sentence is substantively unreasonable. We reject all of Bernhardt's challenges to the convictions but one: we conclude that there is insufficient evidence to support his conviction for attempted travel. We therefore remand for resentencing based on the remaining five counts of conviction.

I.

According to the evidence at trial, in July 2015, Bernhardt began communicating with a woman in the Philippines with the initials J.O.B. The two communicated primarily through Facebook Messenger, the social network's online chat service, but they also sent each other e-mails and spoke by telephone. During their conversations, J.O.B. told Bernhardt that she needed financial support. She also told him that she had a teenage daughter named L.O.B.

Bernhardt first contacted L.O.B. directly in November 2015 using Facebook Messenger. L.O.B. told Bernhardt that she was fourteen years old; despite her youth, Bernhardt asked L.O.B. to send him nude images of herself. Bernhardt told L.O.B. that if she did what he wanted, he would help J.O.B. financially.

At first, L.O.B. refused, telling Bernhardt, "You are bad guy" and "No thanks. I help my mother. I work hard too and I will continue my study." But Bernhardt persisted, offering L.O.B. 10,000 Philippine pesos (approximately $200) in exchange for the images. Eventually, L.O.B. acquiesced and sent Bernhardt several nude pictures of herself through Facebook Messenger.

During his conversations with J.O.B. and L.O.B., Bernhardt discussed traveling to the Philippines to have sex with L.O.B. at a hotel in Manila. He told J.O.B. that

he wanted her to bring L.O.B. to a hotel to meet him, and he told L.O.B., "You and I will do things together at the hotel." He offered L.O.B. "25,000 php for one week at the hotel. . . . Anything goes," and told her, "You and I are going to play games. . . . Sexxxx games." Bernhardt later told investigators that his communications about traveling to the Philippines were just "smoke and mirrors," and investigators found no evidence that Bernhardt purchased a plane ticket for travel to the Philippines or reserved a hotel room there.

Law enforcement became aware of Bernhardt's communications with L.O.B. in February 2016. Facebook, Inc., had notified the National Center for Missing and Exploited Children of a possible instance of enticement of children for sexual acts. Investigators traced the messages to Bernhardt's residence in Tuttle, North Dakota.

Law enforcement agents then executed a search warrant at Bernhardt's residence. From the basement, agents seized Western Union receipts for money that Bernhardt sent to J.O.B. in the Philippines, numerous electronic devices, and $34,640 in suspected counterfeit U.S. currency located in a cupboard in the bathroom. The agents who examined the money explained that some of the bills were printed on only one side; some were printed on both sides using thick paper or card stock; and some were printed on both sides using paper that was "not as thick, but probably more consistent with our currency." Special Agent Trudell of the Department of Homeland Security testified that the variance in thickness of the paper used to print the bills demonstrated a progression in technique and was consistent with an effort to perfect the bills. The currency also bore legitimate serial numbers corresponding to genuine currency.

In an interview with investigators, Bernhardt discussed the origin of the fake money. He told investigators that he and his cousin were "just goofing around one day" and created the money by taking pictures of real bills or scanning them, printing the images onto paper, and then cutting the paper into the shape of bills using a paper

-3-

cutter. Bernhardt stated that his cousin suggested that they keep the money for "board games, like Monopoly," or for poker between the two of them, and denied ever passing the bills.

Bernhardt was arrested and charged with attempted exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e), attempted receipt of images depicting sexual exploitation of a child in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), possession of counterfeit obligations in violation of 18 U.S.C. § 472, and attempted travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) and (e).

After his arrest, while he was released pending trial, Bernhardt contacted J.O.B., who had become a witness in the investigation. Twice he wrote to J.O.B., using a nickname for her daughter L.O.B.:

> Sweetheart, there is a police investigation going on right now concerning my conversation with princess. If anyone from the police contacts you or princess, do not answer any questions. You don't know me. It's for all of our best interest. They are looking for human trafficking and child porn.

In a separate message, Bernhardt told J.O.B. to "make sure princess doesn't talk to anyone and delete any nude pics of her or me, ok?" After law enforcement discovered these communications, the grand jury charged Bernhardt with two counts of attempted witness tampering, in violation of 18 U.S.C. § 1512(b)(2) and (b)(3).

Bernhardt pleaded not guilty to the six-count superseding indictment. After a three-day trial, a jury convicted Bernhardt of all six counts. The court sentenced him to 600 months' imprisonment.

II.

A.

Bernhardt first challenges his conviction for possession of counterfeit obligations in violation of 18 U.S.C. § 472, arguing that the evidence presented at trial was insufficient to support the jury's guilty verdict. "We review the sufficiency of evidence supporting a conviction *de novo*, viewing all evidence in the light most favorable to the verdict." *United States v. Wilder*, 597 F.3d 936, 943 (8th Cir. 2010). We will overturn the jury's verdict "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

Section 472 makes it a crime for a person to possess "with intent to defraud" a "counterfeited . . . obligation . . . of the United States." Although Bernhardt admits that he possessed the money found in his bathroom cupboard, he contends that the government failed to present sufficient evidence of his intent. He claims that he never circulated the money and argues that it was so obviously fake that no reasonable jury could infer an intent to defraud. Intent to defraud "cannot be proved by a showing of possession or passing alone," but it may be inferred from other circumstances. *United States v. Armstrong*, 16 F.3d 289, 292 (8th Cir. 1994).

The evidence at trial showed that Bernhardt kept the fake currency in a bathroom cabinet in the basement, away from his other possessions. The "segregation of counterfeit bills from genuine bills" is one recognized indicia of intent to defraud. *Id.* Federal agents also explained that Bernhardt's use of paper of different thicknesses demonstrated a progression in his technique, consistent with an intent to perfect the printed currency. The jury, of course, was not required to credit Bernhardt's exculpatory explanation for the bills. Viewing the evidence in the light most favorable to the verdict, we conclude that the government presented sufficient evidence of Bernhardt's intent.

Bernhardt also argues that the government failed to prove that the currency was "counterfeit." Section 472 does not define the term "counterfeit," but courts have applied the so-called "similitude test" to determine whether the currency qualifies as "counterfeit." *United States v. Hall*, 801 F.2d 356, 357-58 (8th Cir. 1986) (collecting cases). This test dates to a jury instruction given by Judge Henry Clay Caldwell (later, the first chief judge of the Eighth Circuit) in the Eastern District of Arkansas during the nineteenth century. *See id.* at 357 & n.3; *United States v. Kuhl*, 85 F. 624, 631 (S.D. Iowa 1898); Richard S. Arnold & George C. Freeman, III, *Judge Henry Clay Caldwell*, 23 UALR L. Rev. 317, 317 (2001). Under this approach, currency is "counterfeit" if it "bears such a likeness or resemblance to one of the genuine bonds of the United States as to be calculated to deceive an honest, sensible, and unsuspecting man of ordinary observation and care, dealing with a man supposed to be honest." *Hall*, 801 F.2d at 357 n.3. The district court gave an equivalent instruction in this case. R. Doc. 63, at 19.

Bernhardt contends that no reasonable jury could find that the money was counterfeit because many of the bills were printed on only one side using paper that was either too thick or too thin. The Ninth Circuit, he notes, once reversed a conviction under § 472 where notes were printed on "poor paper" and only on one side. *See United States v. Johnson*, 434 F.2d 827, 829 (9th Cir. 1970). But according to testimony from an investigator in this case, at least some of Bernhardt's money was printed on both sides using paper that was "more consistent with our currency." The bills also bore legitimate serial numbers. From this evidence, a reasonable jury could have concluded that the bills seized from the cupboard sufficiently resembled genuine currency so as to qualify as "counterfeit" under § 472. Bernhardt's own favored authority similarly affirmed a conviction under § 472 when notes were double-sided photocopies of genuine currency. *Johnson*, 434 F.2d at 829. We therefore affirm Bernhardt's conviction for possession of counterfeit obligations.

B.

Bernhardt raises three challenges related to his convictions for two counts of attempted witness tampering. We address each argument in turn.

1.

Bernhardt first argues that the two counts of attempted witness tampering are multiplicitous. Bernhardt's objection alleges a defect in the indictment; under the rules of procedure, this point must be raised in a motion before trial. Fed. R. Crim. P. 12(b)(3)(B)(ii). Under Rule 12(c)(3), a court may consider an untimely multiplicity objection if the defendant "shows good cause" for his failure to raise it before trial. *See United States v. Anderson*, 783 F.3d 727, 741 (8th Cir. 2015). Bernhardt concedes that he did not raise his objection in a pre-trial motion, and he has offered no explanation, let alone "good cause," for his failure to do so. He merely contends that this court should review the objection for plain error, and the government appears to agree. Although there is authority suggesting that the absence of good cause forecloses the point altogether, *see id.*, we will assume for the sake of analysis that plain-error review is available. *Cf. United States v. Hinkeldey*, 626 F.3d 1010, 1012 (8th Cir. 2010). To obtain relief under the plain-error standard, Bernhardt must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

"An indictment is multiplicitous if it charges the same crime in two counts." *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005). Where "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *United States v. Grimes*, 702 F.3d 460, 467 (8th Cir. 2012) (quoting *Blockburger v. United States*, 284 U.S.

-7-

299, 304 (1932)).  "[U]nless the two offenses each contain an element not found in the other, they are the same offense and double jeopardy bars additional punishment." *Id.*

One count charged Bernhardt with violating 18 U.S.C. § 1512(b)(2)(B).  That provision makes it a crime to:

> knowingly use[] intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to . . . cause or induce any person to . . . alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding.

A second count alleged that Bernhardt violated 18 U.S.C. § 1512(b)(3), which makes it unlawful to:

> knowingly use[] intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense.

Comparing the two provisions, we conclude that each statutory subdivision requires proof of an element that the other does not.  Whereas § 1512(b)(2)(B) requires that the defendant intend to "cause or induce any person to . . . *alter, destroy, mutilate, or conceal an object* with intent to impair the object's integrity or availability for use in an official proceeding," *id.* (emphasis added), § 1512(b)(3) does not.  Conversely, while § 1512(b)(3) requires proof that the defendant acted with the intent to "hinder, delay, or prevent the *communication . . . of information* relating to the commission or possible commission of a Federal offense," *id.* (emphasis added), § 1512(b)(2)(B) does not.  The two counts are therefore not multiplicitous.

Bernhardt says the counts are multiplicitous because they arose from a single "impulse"—namely, the set of three messages he sent to J.O.B. But the "impulse test," which treats all violations that arise from a single "impulse" as one offense, applies only where multiple counts charge violations of the *same* statutory provision, and the court must determine the appropriate unit of prosecution. *United States v. Sandstrom*, 594 F.3d 634, 651-52 (8th Cir. 2010); *Chipps*, 410 F.3d at 447-49. The two counts at issue here charged violations of *different* subdivisions of § 1512(b), so the relevant inquiry is whether each subdivision "requires proof of a fact which the other does not." *Grimes*, 702 F.3d at 467; *see also United States v. Galvan*, 949 F.2d 777, 782 (5th Cir. 1991). Because § 1512(b)(2)(B) and (b)(3) each has at least one unique element, the two counts are not multiplicitous.

2.

Bernhardt also challenges the court's jury instruction defining "corruptly persuade" as it is used in § 1512(b). Bernhardt did not timely object to the instruction in the district court, so we review for plain error. *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011); Fed. R. Crim. P. 30(d).

The district court recited the definition of "corruptly persuade" as suggested by the Eighth Circuit's Model Jury Instructions. *See Eighth Circuit Manual of Model Jury Instructions* 6.18.1512 (2014). The court instructed the jury as follows: "To corruptly persuade someone means to persuade with consciousness of wrongdoing." This court arguably endorsed that instruction in *United States v. Craft*, 478 F.3d 899, 900 (8th Cir. 2007). *See United States v. Mann*, 701 F.3d 274, 305-06 (8th Cir. 2012). But relying on *United States v. Farrell*, 126 F.3d 484 (3d Cir. 1997), and *United States v. Davis*, 183 F.3d 231 (3d Cir. 1999), Bernhardt argues that the district court's definition of "corruptly persuade" was incorrect. He suggests that the court should have instructed the jury that corrupt persuasion includes "attempts to persuade that are coercive in some way or that entail a request of another to violate a legal

-9-

duty." He contends that the definition should exclude "noncoercive attempts to persuade someone else [not] to volunteer information to law enforcement agents or to dispose of physical materials."

In *Farrell*, a divided panel of the Third Circuit held that a defendant's attempts to persuade a co-conspirator to refrain from volunteering information to law enforcement did not amount to corrupt persuasion under § 1512(b). The court observed that the co-conspirator enjoyed a Fifth Amendment right against self-incrimination and ruled that "more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure in order to hinder an investigation." 126 F.3d at 488-89. *Davis*, in *dicta*, disapproved a jury instruction that "'corruptly' means having improper motive or purpose of obstructing justice," because *Farrell* held that "'corrupt persuasion' involves more than an improper motive." 183 F.3d at 250 n.6.

Others have not universally endorsed the Third Circuit's interpretation. *Farrell* itself included a dissenting view that "corruptly persuade" means "persuasion that is motivated by an improper purpose." 126 F.3d at 492 (Campbell, J., dissenting). Two circuits are aligned with the dissent in *Farrell*, *see United States v. Shotts*, 145 F.3d 1289, 1300-01 (11th Cir. 1998); *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996), while the Ninth Circuit has sided with the Third Circuit. *United States v. Doss*, 630 F.3d 1181, 1189-90 (9th Cir. 2011). Without rehearsing the arguments on each side of the debate, it sufficient on plain error review to say that the *Farrell* majority's view is at least subject to reasonable dispute, and that the judges who disagree with *Farrell* are not obviously wrong. In this case, moreover, the district court's jury instruction required not merely an "improper purpose," but a "consciousness of wrongdoing," a standard that may well pass muster with those who endorse *Farrell*. *See Doss*, 630 F.3d at 1189-90. Requiring the government to prove consciousness of wrongdoing likely would preclude a conviction for innocent conduct such as encouraging a person to exercise a Fifth Amendment right to remain

silent or to invoke an evidentiary privilege. *See Arthur Anderson LLP v. United States*, 544 U.S. 696, 704 (2005); *Doss*, 630 F.3d at 1190. On the instruction in this case, there was no plain error warranting relief.

3.

Bernhardt also complains that insufficient evidence supported the verdicts that he "corruptly persuade[d]" J.O.B. in violation of § 1512(b). Bernhardt argues that his statements to J.O.B. are insufficient to show corrupt persuasion because he did not advise her to take unlawful action. According to Bernhardt, J.O.B. was under no duty to speak with officers or retain illicit photos, so he committed no crime by encouraging her to remain silent and dispose of the images.

We have concluded that the jury instruction defining "corruptly persuade" was not plainly erroneous. Under that instruction, the government was required to prove that Bernhardt attempted to "persuade with consciousness of wrongdoing." There was sufficient evidence to support the convictions under that standard.

Count Four charged that Bernhardt attempted to corruptly persuade J.O.B. with intent to hinder, delay, or prevent the communication to law enforcement of information relating to a federal offense. The evidence showed that Bernhardt expected investigators to contact J.O.B. and L.O.B. about human trafficking and child pornography. Bernhardt then implored J.O.B. not merely to exercise a right to remain silent but to lie if asked about him, saying "You don't know me." Evidence that Bernhardt attempted to persuade someone to provide false information to federal investigators is sufficient to support the conviction. *United States v. Pennington*, 168 F.3d 1060, 1066 (8th Cir. 1999); *Farrell*, 126 F.3d at 488.

Count Five charged that Bernhardt attempted to corruptly persuade J.O.B. to destroy or conceal sexually explicit images with intent to impair the availability of

those images for use in an official proceeding. The evidence showed that after Bernhardt was charged with child exploitation, and thus had knowledge of an official proceeding, he asked J.O.B. to delete any nude images of himself and L.O.B. Although L.O.B. herself may have had no obligation to retain those images, especially if she lacked knowledge of an investigation, there was sufficient evidence that *Bernhardt* acted with consciousness of wrongdoing to make the images unavailable for use in his criminal case. He was aware of the pending proceeding and expected that investigators would be seeking the images. A reasonable jury thus could find that he did not act with an innocent purpose but with consciousness of wrongdoing. *See Mann*, 701 F.3d at 306-07. Accordingly, we affirm Bernhardt's two convictions for attempted witness tampering in violation of 18 U.S.C. § 1512(b)(2)(B) and (b)(3).

C.

Bernhardt next challenges his conviction under 18 U.S.C. § 2423(b) and (e) for attempted travel with intent to engage in illicit sexual conduct. Bernhardt complains that the district court erroneously instructed the jury and that sufficient evidence does not support the jury's verdict.

1.

"The elements of attempt are (1) intent to commit the predicate offense, and (2) conduct that is a substantial step toward its commission." *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007). Bernhardt contends that the jury instruction defining "substantial step" was erroneous. Bernhardt did not timely object to the instruction, so we review his argument on appeal for plain error. *Poitra*, 648 F.3d at 887.

The court gave the following instruction:

-12-

Attempt requires a "substantial step" to commit the crime. A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.

Bernhardt complains that this instruction was flawed in three respects. He contends that the court should have informed the jury that a substantial step must unequivocally indicate the actor's criminal intent, *see United States v. Villarreal*, 707 F.3d 942, 960 (8th Cir. 2013), that a substantial step is one that will lead to the consummation of the crime unless interrupted by external forces, *see United States v. Carlisle*, 118 F.3d 1271, 1273 (8th Cir. 1997), and that a substantial step is something more than "mere abstract talk." *See United States v. Mims*, 812 F.2d 1068, 1078 (8th Cir. 1987).

A district court has wide discretion in formulating appropriate jury instructions, *Poitra*, 648 F.3d at 887, and a defendant is "not entitled to a particularly worded instruction where the instructions given by the trial judge adequately and correctly cover the substance of the requested instruction." *United States v. Manning*, 618 F.2d 45, 48 (8th Cir. 1980). Although Bernhardt's suggested language is drawn from decisions elaborating on the meaning of "substantial step," the district court's instruction recited verbatim the law of attempt as we have explained it. *See, e.g.*, *United States v. Larive*, 794 F.3d 1016, 1019 (8th Cir. 2015). The instruction was therefore not plainly erroneous.

-13-

2.

Even accepting that the jury was properly instructed on the definition of "substantial step," Bernhardt contends that there was insufficient evidence to support the conviction under § 2423(b) and (e). We agree with this point, because the government failed to present sufficient evidence of a substantial step.

The governing statute makes it a crime for "a United States citizen" to attempt to "travel[] in foreign commerce[] for the purpose of engaging in any illicit sexual conduct with another person." 18 U.S.C. § 2423(b), (e). "The elements of attempt are (1) intent to commit the predicate offense, and (2) conduct that is a substantial step toward its commission." *Spurlock*, 495 F.3d at 1014. For purposes of § 2423(e), the "predicate offense" is traveling with the intent to engage in illicit sexual conduct. *See* § 2423(b). Thus, to prove that Bernhardt attempted to travel, the government was required to prove that he took a substantial step toward traveling to the Philippines.

The evidence at trial showed that Bernhardt had discussed meeting J.O.B. and L.O.B. at a hotel in Manila for the purpose of engaging in illicit sexual conduct with L.O.B., used the word "hotel" more than twenty times in conversation with L.O.B., and offered L.O.B. money for one week at a hotel. Relying on our decision in *Spurlock*, the government argues that Bernhardt's messages to L.O.B. constitute an "attempt to groom and prepare [her] for such time as Bernhardt could travel to the Philippines to engage in sex with [her]" and that but for his arrest, Bernhardt would have completed the crime.

This argument confuses an attempt to entice a minor with an attempt to travel. *Spurlock* considered conduct amounting to a substantial step in the context of a different offense—namely, attempting to entice a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). 495 F.3d at 1013. The defendant there attempted to entice minors through his conversations with their putative mother by

-14-

playing on the mother's "influence and control over her daughters." *Id.* at 1014. In this respect, Spurlock's conversations with the mother "went beyond mere preparation; they were necessary to the consummation of the crime; and they strongly corroborate[d] Spurlock's criminal intent to entice the girls." *Id.* Although Bernhardt engaged in similar behavior, he was charged with a different crime. His sexually explicit conversations with L.O.B. and statements to J.O.B. about wanting to have sex with L.O.B. at a hotel evince an intent to engage in illicit sexual conduct with L.O.B. But they are not a step toward the act of *traveling* to do so.

The government also cites a jailhouse recording between Bernhardt and another party in which Bernhardt discussed his relationship with L.O.B. Bernhardt remarked that "it's a stress, you know, for this girl to come," and that "it is quite a lengthy trip, a bit like a 24-hour ordeal." Bernhardt reported that "I checked into it, a little bit, going the other way of course. That's about what it was due to layovers and travel time." He concluded by describing the large time difference between the two countries and saying, "she's not exactly going to be feeling rosy when she gets over here." The government suggests that when Bernhardt "checked into it, a little bit, going the other way," he checked into travel from the United States to the Philippines and took a substantial step toward travel.

This evidence is too thin to support a conviction for attempted travel. Bernhardt did not purchase a plane ticket, *see United States v. Seljan*, 547 F.3d 993, 998 (9th Cir. 2008), arrive at the airport, *see United States v. Vance*, 494 F.3d 985, 990 (11th Cir. 2007), or travel from his home to another location where future travel would occur. *United States v. Waltman*, 529 F. App'x 680, 682 (6th Cir. 2013) (per curiam). At most, a jury could infer that he researched "a little bit" how to travel by air from the United States to the Philippines and learned about "layovers and travel time." This is not the sort of conduct that "would have resulted in a crime" if "it had not been extraneously interrupted." *Carlisle*, 118 F.3d at 1273. The record here does not show even detailed itinerary planning, so we need not address whether that would

be sufficient to establish an attempt to travel. The government in this case proved nothing more than mere preparation. We therefore vacate Bernhardt's conviction for attempted travel with intent to engage in illicit sexual conduct.

*　　*　　*

For the foregoing reasons, we affirm Bernhardt's convictions for possession of counterfeit obligations and attempted witness tampering but vacate his conviction for attempted travel and remand for resentencing.

_____