# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2315

_____

United States of America

*Plaintiff - Appellee*

v.

Alexander James Oka

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: May 16, 2019
Filed: August 1, 2019
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and KOBES, Circuit Judges.

_____

PER CURIAM.

Alexander Oka appeals his convictions for domestic assault by a habitual offender, in violation of 18 U.S.C. § 117, and for tampering with a witness or victim, in violation of 18 U.S.C. § 1512(b)(1). Oka argues that the government failed to present sufficient evidence at trial to meet the elements of either crime. We hold that

sufficient evidence exists from which a reasonable jury could find Oka guilty on both counts. We therefore affirm the district court's[1] judgment.

## I. *Background*

One night, Oka was at home with his girlfriend, Sundance Rose White Bull; their infant child; and White Bull's two older children. Oka awoke White Bull, demanding that she feed their baby. White Bull began feeding the baby. Oka became angry with White Bull after reading a "friend request" White Bull received on Facebook from another man. Oka accused White Bull of cheating on him and kicked her on the right side of her mid back. The kick knocked the wind out of her and caused pain and bruising. Oka continuously yelled at and threatened White Bull during the episode.

White Bull retreated to the bathroom, where she locked the door and sent a text message to her sister to call the police. She also asked her sister not to respond to her text message and deleted the outgoing message out of fear that Oka would see the message and get even angrier. Police arrived, interviewed White Bull, and then removed her and the two older children from the house.[2]

The police documented White Bull's story and took photographs of the abrasion on her back. Based on White Bull's formal complaint, police arrested Oka for assaulting White Bull.

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

[2]White Bull and the officer decided to leave the infant at the house because the infant was Oka's biological child; the two older children were from White Bull's prior relationship and a source of Oka's anger. After Oka was arrested, Rose returned to the house to pick up the infant.

While in jail, Oka sent a letter to White Bull through a fellow inmate. The letter was introduced at trial. It read:

Dear Rose,

I wanted to tell you that if you don't write a statement saying you don't want to press charges, or come and talk to the prosecutor and drop the charge on me, I'm going to get indicted. I pled not guilty. I'm going to trial. You better come and talk to the prosecutor. I'm not LYING!!! Or call [tribal defense attorney] Jim Cerney and tell him you're not going to show up to my trial. I've got a preliminary hearing on August 31st at 11:00. Don't show up to that. That's the only way I'll get out. I love you and I'm sorry. I miss you a lot, and I miss Baby [omitted]. ☹ I really need your help with this one. If you love me, you'll do this for me. I forgive you. I'm going crazy in here!!! Sorry for arguing with you. Now I'm paying for it. I just want to get out and see you guys. You guys are my world. I'm happy with you two. I know I act crazy, but I truly love you. I stood by your side, never gave up on you. I just need you to do this for me Boo!! When you get $ buy me some minutes so I can call. I feel like it's the end of the world! These days go by slow. I can't stop thinking of you and my Baby. Come and get me out. It'll be worth it I promise you. I'm on 3,000.00 bond. This is my life here. Please do this for me. Here's the # to call to buy me some minutes [number omitted]. My 5 digit pin # is [pin omitted]. Do this before the Feds come and pick me up!! I'm against the clock here. If you truly love me, you'll do this for me. I'll be waiting. Yours truly. Love Alex XOXOXO.

Appellee's Addendum at 2.[3] In the margin of the letter, Oka wrote, "I [expletive] up. I'm sorry." *Id.*

---

[3]The letter has been edited to reflect correct spelling, grammar, and punctuation without altering its substance.

A federal grand jury returned an indictment charging Oka with domestic assault by a habitual offender, in violation of 18 U.S.C. § 117. Thereafter, a superseding indictment was filed, adding an additional count against Oka for tampering with a witness or victim, in violation of 18 U.S.C. § 1512(b)(1), based on the letter to White Bull.

Oka's case proceeded to trial. At the conclusion of the evidence, Oka moved for a judgment of acquittal on both counts, arguing that the government failed to present sufficient evidence to convict him on either charge. The district court denied the motion. The jury then returned guilty verdicts on both counts. The district court sentenced Oka to 47 months' imprisonment and three years' supervised release.

## II. *Discussion*

Oka appeals both convictions on the ground that the government failed to present sufficient evidence to convict him. We review de novo challenges to the sufficiency of the evidence. *United States v. St. John*, 716 F.3d 491, 493 (8th Cir. 2013) (per curiam). "Th[is] standard is very strict . . . ." *United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008). We "will affirm the jury's verdict if, taking all facts in the light most favorable to the verdict, a reasonable juror could have found [Oka] guilty of the charged conduct beyond a reasonable doubt." *St. John*, 716 F.3d at 493 (internal quotation omitted). "On this review we do not weigh the evidence or assess witness credibility because the jury has the sole responsibility to resolve conflicts or contradictions in testimony." *Id*. (internal quotation omitted).

Oka first asserts that the government did not present sufficient evidence to convict him for domestic assault by a habitual offender. Conceding the other elements, Oka only contests whether the government proved that he "commit[ted] a domestic assault." 18 U.S.C. § 117(a).

The statute does not define "assault." But, "[w]here a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." *United States v. Harlan*, 815 F.3d 1100, 1106 (8th Cir. 2016) (quoting *United States v. Turley*, 352 U.S. 407, 411 (1957) (interpreting the same statute for its definition of assault)).

> Common law assault embraces two different crimes: (1) attempted battery, that is, an intended effort to cause bodily harm to another which falls short of success regardless of whether the intended victim knows of the attempt, and (2) any act which is intended to, and reasonably does, cause the victim to *fear* immediate bodily harm; such menacing constitutes assault even if no physical harm is attempted, achieved, or intended.

*Id*. (cleaned up).

The district court's jury instruction defined assault for the jury as follows:

> An "assault" as used in these instructions is (1) any intentional and voluntary attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm or (2) any intentional or knowing harmful or offensive bodily touching or contact, however slight, without justification or excuse, with another's person, regardless of whether physical harm is intended or inflicted or whether the victim has reasonable apprehension of bodily harm.

Final Jury Instrs., Instr. No. 7 at 8, *United States v. Oka*, No. 1:17-cr-10037-RAL (D.S.D. Feb. 23, 2018), ECF No. 52.

At trial, White Bull testified that Oka kicked her in the back with enough force to knock the wind out of her, struck her on the head, threatened her, and made her

afraid. White Bull's sister corroborated White Bull's testimony. The sister testified about a text message she had received from White Bull in which White Bull "asked [her sister] to call the police" and said that Oka was hurting White Bull. Trial Tr. at 68, *United States v. Oka*, No. 1:17-cr-10037-RAL (D.S.D. July 9, 2018), ECF No. 81. The government also presented police photographs taken of the abrasion on White Bull's back. We conclude, based on these facts, a reasonable jury could have found that Oka either "intended . . . to cause bodily harm to" White Bull or "intended to, and reasonably d[id], cause [White Bull] to *fear* immediate bodily harm." *Harlan*, 815 F.3d at 1106 (internal quotations omitted). The evidence sufficiently established facts enabling the jury to conclude Oka committed domestic assault.

Oka next argues that the evidence was insufficient to convict him for tampering with a victim or witness under 18 U.S.C. § 1512(b)(1). Section 1512(b)(1) proscribes "knowingly us[ing] intimidation, threaten[ing], or corruptly persuad[ing] another person, or attempt[ing] to do so . . . with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding." As reflected by the district court's instruction, this crime has two elements: (1) "that the defendant, Alexander James Oka, knowingly used corrupt persuasion against Sundance Rose White Bull;" and (2) "that the defendant did so with intent to influence, delay, or prevent the testimony of Sundance Rose White Bull at an official proceeding." Final Jury Instrs., Instr. No. 8 at 9. "To corruptly persuade someone means to persuade with consciousness of wrongdoing." *Id*. And acting with an "intent to influence" testimony means acting "for the purpose of getting the person to change or color or shade her testimony in some way." *Id*.

Oka argues that he did not knowingly use corrupt persuasion because his letter "did *not* ask White Bull to change her story," "did *not* ask [White Bull] to lie," "did *not* accuse [White Bull] of making a false allegation against him," and "did *not* threaten White Bull in any way." Appellant's Br. at 8. Oka overlooks that the letter explicitly asked White Bull to not show up to a hearing, and to tell the lawyers on the

case that she would be unavailable for trial. Oka concedes as much in his brief, stating that "the letter simply asked White Bull to not show up at trial." *Id*. at 9. Oka's request clearly conveys that Oka believed White Bull's absence would benefit his defense and impair the prosecution's case.

Tampering does not require proof that White Bull was actually influenced by Oka's actions. *See, e.g.*, *United States v. Bernhardt*, 903 F.3d 818, 827 (8th Cir. 2018). Based on a fair reading of Oka's letter, a reasonable jury could have found that Oka "did not act with an innocent purpose but with consciousness of wrongdoing." *Id*. In other words, it was reasonable for a jury to conclude that Oka knew attempting to prevent the testimony of the primary witness against him was wrongful. Therefore a reasonable jury could find that he used corrupt persuasion against White Bull "with intent to . . . prevent [her] testimony." Final Jury Instrs., Jury Instr. No. 8 at 9. The government presented sufficient evidence to support Oka's conviction of witness tampering.

## III. *Conclusion*

The judgment of the district court is affirmed.

_____