# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1219

_____

United States of America

*Plaintiff - Appellee*

v.

Justin Joseph Halter

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: January 15, 2021
Filed: February 24, 2021

_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

After the district court[1] denied his motion to suppress, Justin Halter conditionally pled guilty to being a felon in possession of a firearm. At sentencing,

_____

[1]The Honorable John A. Jarvey, Chief Judge of the United States District Court for the Southern District of Iowa.

the court found that Halter possessed the firearm in connection with another felony, and thus calculated his Guidelines range as 57 to 71 months' imprisonment. The court sentenced Halter to an imprisonment term of 71 months. Halter now appeals the denial of his suppression motion and his sentence. We affirm.

## I.    BACKGROUND

On February 1, 2019, at about 7:30 p.m., law enforcement received a call from Halter's wife and her boyfriend. They explained that Mrs. Halter had just talked to Halter, who was watching the Halters' four-year old daughter, on the phone. During the call, Mrs. Halter (1) heard her daughter screaming and crying in the background; (2) learned that Halter had stolen a firearm; and (3) listened to Halter threaten to shoot law enforcement, Mrs. Halter's boyfriend, or anybody else (aside from her) that tried to come get the girl. Johnson County Sheriff's Deputy Brandon Richmond was dispatched to Halter's residence to conduct a welfare check on the little girl. Deputy Richmond knew who Halter was and where he lived, as the deputy had prior run-ins with Halter.

While en route to Halter's residence, dispatch informed Deputy Richmond that Halter might be leaving his residence in a black Impala. Because Halter lived in a rural area with only one outlet road, Deputy Richmond parked his vehicle in a spot where he would be able to see the Impala if it left Halter's residence. Dispatch subsequently informed the deputy that three other vehicles could be at Halter's residence. Deputy Richmond soon saw a red sedan approaching from the direction of Halter's residence. Deputy Richmond chose to follow the sedan, as there were only a handful of other houses nearby and not many vehicles that would be traveling on the outlet road.

When Deputy Richmond began to follow the sedan, it accelerated. Because, in his experience, most vehicles do not run from the police, this piqued his interest

and also made Deputy Richmond more convinced that Halter was driving the sedan. Even though Deputy Richmond never activated his lights or siren or made any other show of authority, the driver of the vehicle pulled the car to the side of the road. Deputy Richmond stopped behind the sedan and turned on his emergency lights, but not his siren.[2] As Deputy Richmond started walking toward the sedan, he recognized Halter because of his "bald head." He called out, "Mr. Halter, is that you?" Halter began yelling out the window, including saying "[y]ou're all going to die" to the (now multiple) officers on the scene. At one point, Halter jumped out of his vehicle, threw off his coat, waved his arms around, and then got back into his car. Halter repeatedly refused police commands. Eventually, Halter got out of his vehicle with his daughter. The officers retrieved a gun from a holster on Halter's hip and got the girl out of harm's way. Halter was subsequently charged with being a felon in possession of a firearm.

Halter moved to suppress the firearm evidence, arguing it was the fruit of an unlawful seizure. The district court denied Halter's motion, concluding that any seizure was justified under the community caretaker function because it was reasonable for officers to check on the little girl's well-being. The district court found the escalation of the encounter beyond the initial welfare check was justified by Halter's threat ("you're all going to die") and erratic behavior. Based on Halter's conduct, the court concluded the officers had probable cause to arrest him.

After his suppression motion was denied, Halter pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At sentencing, the district court applied a four-level enhancement under § 2K2.1(b)(6)(B) of the Sentencing Guidelines, finding that Halter possessed a

---

[2]Deputy Richmond testified that the place the vehicles came to a stop was rural, dimly lit, dark, and icy, so he turned on his emergency lights for visibility and safety purposes.

firearm in connection with another felony offense. Specifically, Halter had possessed the firearm in connection with a violation of Iowa Code § 724.4(1), which criminalizes an individual "knowingly carr[ying] or transport[ing] [a handgun] in a vehicle." Both parties agreed that, pursuant to our decision in United States v. Walker, 771 F.3d 449 (8th Cir. 2014), the enhancement applied. But Halter argued the district court should vary downward, as the enhanced guidelines range overstated his culpability. Halter asserted that, in every other state in this Circuit, illegally carrying a weapon in this manner would be treated as an aggravated misdemeanor (not a felony), and thus the sentencing enhancement would not apply. Halter claimed application of the enhancement created an unwarranted sentencing disparity. The district court rejected Halter's request for a variance and imposed a within-Guidelines sentence of 71 months' imprisonment. Halter appeals, challenging both the denial of his suppression motion and his sentence.

## II.  DISCUSSION

### A. Suppression

"We review the district court's factual findings for clear error and its legal conclusions *de novo*." United States v. Smart, 393 F.3d 767, 769 (8th Cir. 2005). We question whether Halter was "seized" for Fourth Amendment purposes when Deputy Richmond simply pulled up behind Halter's parked vehicle, activated his emergency lights for visibility purposes, and approached on foot. Cf. United States v. Cook, 842 F.3d 597, 600–01 (8th Cir. 2016) (activating wig wag emergency lights and approaching parked vehicle not a seizure); United States v. Mabery, 686 F.3d 591, 595–97 (8th Cir. 2012) (spotlighting defendant's parked vehicle not a seizure); United States v. Dockter, 58 F.3d 1284, 1287 (8th Cir. 1995) (activating amber warning lights and approaching parked vehicle not a seizure). We need not reach this issue, however, because even if Halter was seized, the seizure was justified under the community caretaker exception.

The community caretaker exception allows officers to respond to potential emergencies if (1) they have a reasonable belief an emergency exists, and (2) their response is carefully tailored to address the emergency. United States v. Sanders, 956 F.3d 534, 539–40 (8th Cir. 2020) (cleaned up). Here, law enforcement received a report that a little girl's mother had heard her daughter screaming and crying during a phone call with the girl's father. The mother also reported that the father had a firearm and threatened to kill anyone else who tried to come get the child. Officers were reasonably concerned about the girl's well-being and, since Halter left his house before officers could respond, they were justified in effecting a traffic stop on Halter in order to conduct a welfare check on the girl. The escalation of the encounter occurred only because Halter chose to escalate it by his own threatening conduct in response to the welfare check. The officers' response was reasonable after Halter threatened that all of the officers were "going to die," repeatedly refused police commands, and acted in a generally erratic manner. When Halter was arrested, the police officers had ample probable cause to arrest him. The district court did not err in denying Halter's motion to suppress.

## B. Sentence

Generally, our review of a criminal sentence proceeds in two stages. We first ensure the district court committed no significant procedural error, such as an improper calculation of the Guidelines range, failure to consider the 18 U.S.C. § 3553(a) factors, or an inadequate explanation for the chosen sentence. United States v. Smith, 983 F.3d 1006, 1008 (8th Cir. 2020). When considering whether there is procedural error, we review the district court's factual findings for clear error and its application or interpretation of the Guidelines *de novo*. United States v. Petruk, 836 F.3d 974, 976 (8th Cir. 2016). If we find no procedural error, we review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. United States v. Zeaiter, 891 F.3d 1114, 1122 (8th Cir. 2018) (citation omitted).

The district court properly calculated the Guidelines range, treated the Guidelines as advisory, and appropriately considered the § 3553(a) factors in imposing the sentence. While Halter contends the district court erred when it failed to consider the disparities that would result by applying the four-level enhancement under § 2K2.1(b)(6)(B) of the Guidelines, this claim is belied by the record. The record reflects that the district court fully considered Halter's argument but rejected it. The district court found the enhancement applied as a matter of law under Walker, and also the application of the enhancement was reasonable under the facts of the case. Specifically, the court found that the presence of a firearm made the situation more dangerous. The court observed that the officers were confronted with a "very, very precarious situation" when Halter escalated the situation while the officers were simply trying to check on the welfare of a child. The district court fully considered, and ultimately rejected, Halter's arguments for a downward variance under § 3553(a).

When, as here, the district court imposes a within-Guidelines sentence, we may apply a presumption of reasonableness. United States v. Hess, 829 F.3d 700, 704 (8th Cir. 2016) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). The district court is vested with "wide latitude" to weigh the sentencing factors and assign some greater weight than others. United States v. Lundstrom, 880 F3d 423, 445 (8th Cir. 2018) (quoting United States v. Deering, 762 F.3d 783, 787 (8th Cir. 2014)). Having reviewed the sentencing record and the district court's reasoning for the sentence imposed, we conclude the court did not abuse its discretion or impose a substantively unreasonable sentence.

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

_____