# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1884

_____

United States of America

*Plaintiff - Appellee*

v.

Martece Arielle Saddler

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: October 22, 2021
Filed: December 3, 2021

_____

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Martece Saddler conditionally pleaded guilty to being a felon in possession of a firearm -- a sawed-off shotgun found during a warrant search of her apartment following a shooting in the parking lot outside the apartment building. See 18 U.S.C. § 922(g)(1). Saddler reserved the right to appeal the denial of her motion to suppress.

She now appeals the final judgment of conviction, arguing the district court[1] wrongfully denied the motion because the affidavit supporting the warrant did not provide probable cause, the good-faith exception to the exclusionary rule does not apply, and the plain-view exception to the warrant requirement did not justify seizure of the shotgun. Reviewing the district court's findings of fact for clear error and its conclusions of law *de novo*, we affirm. See United States v. Szczerba, 897 F.3d 929, 936 (8th Cir. 2018) (standard of review).

## I. Background

At 1:07 p.m. on June 8, 2019, police officers responded to a shooting in the parking lot of the apartment building at 120 North Cliff Avenue in Sioux Falls, South Dakota. There were three shooting victims: Jevon Allen, Joshua Allen, and Eugene Carr. All were transported to the hospital. At the scene, the officers observed a security camera in the window of the Unit 1 apartment, pointed toward the parking lot where the shooting took place. They performed a protective sweep of Unit 1, the residence of Saddler and her partner, Christina Haney. Saddler was present when the sweep occurred. Her motion to suppress did not challenge the sweep or assert that the officers conducted an unlawful search at that time.

At the suppression hearing, Sioux Falls Police Detective Matt Dunn testified that he participated in investigating the shooting after receiving a call from a sergeant in the detective division. Dunn interviewed two witnesses at the Law Enforcement Center. Witness Tracy Frisby told Dunn he saw the shooter exit the front door of 120 North Cliff Avenue holding a handgun and fire into a crowd of males in the parking lot. The shooter then left in a Buick sedan parked in front of the apartment complex.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting as modified the Report and Recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

Witness Tenessa Carr, a resident of the adjacent apartment building at 116 North Cliff Avenue, told Dunn she is the mother of Christina Haney, who lives in Unit 1 with Saddler, and that shooting victim Eugene Carr is Haney's father. Tenessa saw approximately seven males in the building's parking lot. She heard gunshots and saw the men running away. Tenessa said that Haney is the primary driver of a black Buick sedan that was present in the parking lot prior to but not after the shooting. However, Haney went to the hospital in another car with her father, who later died of his injuries.

After interviewing Frisby and Tenessa Carr, Detective Dunn viewed the surveillance video footage of a business across the street from 120 North Cliff Avenue. The video corroborated Frisby's account of the shooting. Dunn also learned from a "law enforcement source" that Haney was involved in a social media dispute with Jasmine Allen, the sister of two shooting victims. Victim Joshua Allen told detectives that the group had gone to the apartment complex to settle a dispute "with Christina's people."

Dunn then prepared a supporting affidavit and applied for a warrant to search Unit 1. A magistrate signed the warrant drafted by Dunn at 5:57 p.m. Dunn and other officers executed the warrant. Dunn orally described to the others what they were authorized to look for; there is no evidence that Dunn's warrant affidavit accompanied the officers to the search. At the suppression hearing, Police Officer Dustin Jorgensen testified that he was tasked with searching one of the bedrooms in Unit 1. After moving some clothes on a shelf in the bedroom closet, Jorgensen saw the stock of a firearm. He removed the gun from the closet, identified it as a shotgun, and noted the gun was unusually short, with the front of the barrel sawed off and the front sight missing. Jorgensen seized the shotgun and a baggie of white powder, a laptop, and two cell phones he also discovered in the bedroom. In executing the warrant, the officers seized a variety of other items including several cameras and cell phones, a computer monitor, an Amazon Kindle, shotgun shells, two pieces of a scale

with traces of drug residue, photographs, and documents bearing the names Christina Haney and Martece Saddler.

Saddler was charged with two firearm offenses.[2] She moved to suppress all physical evidence seized during the search of Unit 1, and an incriminating statement she later made concerning the shotgun. Saddler argued the warrant violated the Fourth Amendment because it was not issued "upon probable cause," and it did not "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In a 49-page Report and Recommendation, Magistrate Judge Duffy recommended that the motion to suppress be denied, concluding (i) four clauses in the warrant were "unconstitutionally overbroad"; (ii) the warrant was adequately supported by probable cause set forth in Dunn's affidavit; (iii) the good faith exception to the exclusionary rule applies; and (iv) Officer Jorgensen's seizure of the shotgun was justified by the plain-view exception to the Fourth Amendment's warrant requirement. In a 24-page Order, the district court overruled Saddler's objections, adopted the Report and Recommendation as modified, and denied the motion to suppress. On appeal, Saddler argues the district court erred in rulings (ii), (iii), and (iv). The court's determination that the warrant was unconstitutionally overbroad is not at issue and we do not consider it.

## II. The Probable Cause Issue

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. This required Dunn to make a showing to the issuing magistrate of facts "sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." United States v. Green, 954 F.3d

---

[2]The government dismissed the second charge, possession of an unregistered firearm, as part of the plea agreement.

1119, 1123 (8th Cir. 2020). In <u>Warden v. Hayden</u>, 387 U.S. 294 (1967), the Supreme Court did away with "the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband." <u>Id.</u> at 301. Probable cause to believe that "mere evidence" will be discovered is enough to support a search warrant:

> There must, of course, be a nexus . . . between the item to be seized and criminal behavior. Thus in the case of "mere evidence," probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.

<u>Id.</u> at 307. When the issuing magistrate relies solely on a supporting affidavit in determining probable cause, as in this case, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." <u>United States v. Roberts</u>, 975 F.3d 709, 713 (8th Cir. 2020). In reviewing whether there was probable cause to issue the warrant, we give the issuing magistrate's determination "great deference," examining the sufficiency of the supporting affidavit "using a 'common sense' and not a 'hypertechnical' approach." <u>United States v. Grant</u>, 490 F.3d 627, 631-32 (8th Cir. 2007).

Saddler argues the factual information in Dunn's supporting affidavit did not provide enough "substance" or "detail" to allow the issuing magistrate to conclude that probable cause existed to search Unit 1. Like the district court, we disagree. The affidavit described the shooting of three men who had been hospitalized; Dunn's interviews with Tenessa Carr and Frisby; what the business video surveillance showed, including the departure of a vehicle often driven by Haney; the reported social media dispute between Haney and a sister of two victims that led to the parking lot confrontation; and the presence in Unit 1 of a security camera pointed at the parking lot where the shooting occurred. These facts connected Haney, a resident of Unit 1, to the shooting. They also created a fair probability that evidence that will aid in a particular apprehension or conviction would be found if the magistrate granted

Dunn's request to search "devices associated with this video camera," "devices related to storage of the data involving this video camera," and "any device used to convey social or store social media." Thus, the issuing magistrate had a "substantial basis" to believe there was a "fair probability" that evidence related to the shooting would be found in Unit 1. See United States v. O'Dell, 766 F.3d 870, 873 (8th Cir. 2014).

### III. The Good Faith Exception Issue

Although the district court determined the magistrate had probable cause to issue the warrant to search Unit 1, it determined the warrant was invalid because Dunn's showing of probable cause did not extend to the broad categories of objects the warrant commanded be searched for and seized -- "video cameras, storage devices, any device used for social media and social media storage and any other item related to aggravated assault." The court concluded that this violated the Fourth Amendment's "particularity requirement," which ensures that an authorized search "will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987).

"The ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." United States v. Fiorito, 640 F.3d 338, 345 (8th Cir. 2011), citing Mapp v. Ohio, 367 U.S. 643 (1961). The exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984). However, the Court in Leon identified four circumstances in which an officer's reliance on an invalid warrant would not be objectively reasonable: (1) when the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false" absent "reckless disregard of the truth"; (2) when the issuing magistrate "wholly abandoned his judicial role"; (3) when the affidavit is "so lacking

in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient -- *i.e.*, in failing to particularize the place to be searched or the things to be seized -- that the executing officer cannot reasonably presume it to be valid." Id. at 923. The fourth exception is at issue in this case. In assessing the objective reasonableness of a police officer's belief in the validity of a warrant, we look to the totality of the circumstances, "including any information known to the officer but not presented to the issuing judge." United States v. Jackson, 784 F.3d 1227, 1231 (8th Cir. 2015).

The district court determined that the good faith exception applies "to the search of Saddler's apartment and seizure of various items therein." On appeal, Saddler argues the warrant was so facially invalid, based on its failure to particularly describe the objects to be seized, that no objectively reasonable officer could rely on it. She argues the broad categories of items the warrant authorized a search for permitted a general search that a reasonable officer would have recognized as unlawful. We disagree. Considering the information Dunn provided in the affidavit and learned during the investigation, his reliance on the magistrate's issuance of the warrant was objectively reasonable.

We agree with the district court that our 2018 decision in United States v. Szczerba is analogous. In Szczerba, the lead investigator applied for a warrant to search a hotel room and car, submitting an affidavit listing the particular items the officers wished to search for. 897 F.3d at 935-36. However, the warrant did not identify the items listed in the affidavit and did not incorporate the affidavit by reference. Id. at 936. In concluding the good faith exception nonetheless applied, we noted the warrant described the specific places to be searched and specifically referred to the affidavit, the issuing judge signed the affidavit, and the affidavit accompanied the officers to the search. Id. at 938-39. The first three factors are present here. The warrant identified Unit 1 of 120 North Cliff Avenue as the location to be searched. It referenced Dunn's affidavit in its finding of probable cause, and

the issuing magistrate signed the affidavit, acknowledging it had been subscribed to and sworn before him. Though there is no evidence the affidavit accompanied the officers in executing the warrant, Officer Jorgensen testified the officers were briefed on what they were authorized to search for.

Unlike the warrants in <u>Szczerba</u> and in <u>Groh v. Ramirez</u>, 540 U.S. 551, 558 (2004), which did not list *any* items to be seized, the warrant here broadly described categories of items to be seized, descriptions the district court concluded were unconstitutionally overbroad. A "generic class of items" is permissible in a warrant "when it is impossible to describe the fruits of a crime." <u>United States v. LeBron</u>, 729 F.2d 533, 536 (8th Cir. 1984). All the more so in a warrant to search for "mere evidence." Thus, a reasonable officer executing the warrant could assume it was facially valid in authorizing a search for classes of items such as storage devices for the security camera and "any device used for social media and social media storage." Permission to search for "any other item related to aggravated assault" was carelessly overbroad, but if the clause had been limited to the aggravated assaults described in detail in Dunn's affidavit -- assaults related to the parking lot shooting -- it would likely have been valid. Thus, as in <u>Szcerba</u>, we cannot say the warrant was "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." <u>Leon</u>, 468 U.S. at 923.

The Supreme Court has held in subsequent good faith cases that the exclusionary rule applies only in situations where police conduct is "deliberate, reckless, or grossly negligent." <u>Herring v. United States</u>, 555 U.S. 135, 144 (2009). Applying this principle, Magistrate Judge Duffy concluded that "the police mistake of drafting a facially deficient warrant was the result of negligence and inexperience (it was Detective Dunn's first search warrant application) rather than systemic error or reckless disregard for the constitution." The district court rejected Saddler's contention that Dunn was "grossly negligent" because officers could have seized the security camera during the protective sweep, concluding that Dunn "instead attempted

-8-

to comply with the Fourth Amendment by securing a search warrant." We agree. On appeal, Saddler argues that Dunn in drafting, presenting, and executing the overbroad warrant went beyond "mere negligence." Record facts do not support this conclusory assertion. Dunn's reliance on issuance of the warrant was objectively reasonable.

## IV. The Plain View Exception Issue

The warrant to search Unit 1 at 120 North Cliff Avenue did not authorize executing officers to seize firearms such as the sawed-off shotgun at issue on appeal. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). The plain view exception allows an officer to seize an object without a warrant if "(1) the officer lawfully arrived at the location from which he or she views the object, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." United States v. Arredondo, 996 F.3d 903, 907 (8th Cir. 2021) (quotation marks omitted).

The district court concluded that Officer Jorgensen's seizure of the sawed-off shotgun satisfied these three criteria. First, Jorgensen and the other officers were lawfully in Saddler's apartment because they were executing a warrant in good faith reliance on its validity. Second, Jorgensen immediately noticed the incriminating nature of the short-barreled shotgun after removing it from the closet shelf. Third, Jorgensen had lawful access to the shotgun, including removing the shotgun from the closet shelf which made its incriminating nature obvious, "by virtue of his ongoing search of Saddler's closet for storage devices the size of a SIM card," which measures "about one inch."

On appeal, Saddler first argues that Jorgensen and the other officers were not "lawfully present" in Unit 1 because the warrant to search the apartment was invalid. We agree with the district court that the officers' objectively reasonable reliance on

the warrant's validity made their presence in Unit 1 lawful under the plain view doctrine even though the warrant was later determined to lack the particularity the Fourth Amendment requires. In United States v. Warford, 439 F.3d 836 (8th Cir. 2006), we applied the plain view exception to the seizure of contraband in plain view during execution of a presumed invalid warrant because the items found in plain view "were admissible as evidence seized in good faith reliance on a warrant to search for firearms." Id. at 841-43; accord United States v. Legg, 18 F.3d 240, 244 (4th Cir. 1994) (officers are lawfully present pursuant to an invalid warrant if they have "an objectively reasonable belief that the warrant was valid"); United States v. Morris, 904 F.2d 518, 519 (9th Cir. 1990) (suppression of evidence officer seized in plain view while reasonably relying on an invalid warrant "would not deter future unlawful police conduct").

Saddler next argues the incriminating nature of the shotgun was not apparent when Jorgensen saw its stock on the closet shelf, and accessing the gun's short barrel by taking it off the shelf was a further search in violation of Arizona v. Hicks, 480 U.S. 321, 325-28 (1987) (manipulating an object in plain view without probable cause is unlawful if the manipulation is "unrelated to the objectives of the authorized intrusion"). We disagree. Hicks dealt with a warrantless search in which officers were present in an apartment under exigent circumstances in response to a shooting. This case involves a lawful warrant search which "extends to all areas and containers in which the object of the search may be found." United States v. Weinbender, 109 F.3d 1327, 1329 (8th Cir. 1997). Therefore, the plain view doctrine applies to incriminating items found "in any closet, container, or other closed compartment . . . large enough to contain" an object of the warrant search. United States v. McManaman, 673 F.3d 841, 848 (8th Cir. 2012). Here, Officer Jorgensen had objectively reasonable authority to search for one-inch SIM cards, which were within the scope of the "storage devices" clause of the warrant and the probable cause shown in the affidavit. SIM cards could have been underneath the gun and clothes on the closet shelf. Once Jorgensen removed the shotgun from the closet, its incriminating

nature under federal and South Dakota law was immediately apparent.  <u>See</u> 26 U.S.C. §§ 5845(a), 5861; S.D. Codified Laws §§ 22-1-2(8), (46), 22-14-6.  At that point, Jorgensen had probable cause to believe the gun was contraband or evidence of a crime, and he properly seized it under the plain view exception.

## V.  Conclusion

The judgment of the district court is affirmed.

_____