# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3352
_____

United States of America

*Plaintiff - Appellee*

v.

John Lee Ralston

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: September 22, 2023
Filed: December 14, 2023
_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Following a search of his residence, John Lee Ralston was charged with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). The district court, concluding the <u>Leon</u> good-faith exception applied, denied Ralston's motion to suppress. Ralston entered a conditional guilty plea, was sentenced to a term of 37 months' imprisonment, and now appeals from the denial of his motion to suppress. We reverse.

## I.    BACKGROUND

In January 2021, Ralston was living in rural Jones County, Iowa, on property that his mother had also been living at before she was moved into a care facility. The 9.32-acre parcel of land ("the property") contains two residences bisected by Bear Creek Road. A mobile home is located on the north side of the road and a single-family residence sits on the south side. Law enforcement officers believed Colton Varty was residing in—or at least "frequenting"—the mobile home and Ralston, who had been paroled from prison in November 2020, was living in the single-family home ("Ralston's residence").

Investigators identified Varty as a suspect in multiple burglaries occurring between December 16 and December 25, 2020. After obtaining and receiving information indicating Varty could be storing stolen items on the property, law enforcement applied for a search warrant for the property. The affidavit contained extensive information regarding Varty's alleged involvement in burglaries of unoccupied buildings and construction trailers. The supporting affidavit outlined in detail the information leading law enforcement to "suspect and have probable cause to believe, Varty has committed multiple crimes of [this] nature in proximity to Ralston's residence."

The warrant authorized the search of Ralston's residence, the mobile home where Varty was frequenting/residing, a machine shed, and two separate storage sheds with a physical address of 1221 Bear Creek Road, as well as a blue Jeep Liberty Sport owned by Varty. It authorized officers to seize a number of different things, including items commonly used in thefts or distribution of stolen property, indicia of occupancy, tools burglars use to gain access to locked structures or storage containers, property that had been reported as stolen, shoes believed to have been worn during the thefts, and tire tracks/treads for comparison.

The dispute before us pertains to the search of Ralston's residence located on the south side of the property. Ralston contends the warrant did not demonstrate a

nexus between him and Varty to establish probable cause that evidence would be located inside his house. In analyzing Ralston's argument, the magistrate judge found: (1) the affidavit supporting the search warrant described the places to be searched in overbroad terms; (2) the information in the affidavit connecting Varty to the south side of the property was minimal; and (3) the supporting affidavit contained no information connecting Varty to Ralston's residence. In addition to finding a want of probable cause, the magistrate judge found the good-faith exception did not apply. The government, pointing to the proximity of the two residences, the suitability of the property for criminal activity, and Ralston's criminal history, objected to the magistrate judge's findings and conclusion that the warrant did not establish a nexus between evidence of Varty's burglaries and Ralston's residence. The district court was unpersuaded by the government's objections regarding the probable cause determination, but ultimately denied the motion to suppress, reversing the magistrate judge's determination that the good-faith exception did not apply.

As noted by the district court, the affidavit lacked information indicating Ralston was involved in any of the break-ins or thefts. It instead disclosed the officers' "suspicion" that Ralston could be involved in fencing stolen property. While witnesses reported seeing a vehicle comparable to Varty's in and around the location of the burglaries, Ralston was never alleged to have been seen in the vehicle or at the sites. When law enforcement officers observed Varty's vehicle, it was parked primarily on the north side of the road nearest the mobile home. On a single occasion, an investigator observed Varty on the south side of the property walking towards a parked vehicle that appeared to be like the one Varty was in when he was arrested several weeks prior. On this same day, law enforcement also observed a UTV that they believed had been stolen in Cedar County. This was the only fact the district court could find in the affidavit that attempted to connect Ralston with Varty's well-documented criminal activity. The district court characterized "this lone detail" regarding the UTV as insufficient to establish probable cause to search Ralston's residence. Although the district court agreed with the magistrate judge that the warrant lacked probable cause, the district court denied Ralston's motion to

suppress on the ground that the <u>Leon</u> good-faith exception applied.  Ralston appeals the denial of his motion to suppress.

## II.    DISCUSSION

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its Fourth Amendment determination *de novo*.  <u>United States v. Mitchell</u>, 55 F.4th 620, 622 (8th Cir. 2022).  On appeal, the government briefed only the good-faith exception.  Having abandoned the issue of whether the search warrant lacked probable cause, see <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 739 (8th Cir. 2004) (deeming issues not briefed on appeal abandoned), we turn to the <u>Leon</u> good-faith exception.

The Supreme Court held the exclusionary rule should not be applied to bar the admission of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate," even if that search warrant is later determined to be invalid.  <u>United States v. Leon</u>, 468 U.S. 897, 900, 922-23 (1984).  In assessing whether an officer relied in good faith on the validity of a warrant, a reviewing court considers the totality of the circumstances, including any information known to the officer but not included in the affidavit.  <u>United States v. Marion</u>, 238 F.3d 965, 969 (8th Cir. 2001).  An officer's reliance on a search warrant is objectively unreasonable in four instances:

> (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge 'wholly abandoned his judicial role' in issuing the warrant; (3) when the affidavit in support of the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and (4) when the warrant is 'so facially deficient' that the executing officer could not reasonably presume the warrant to be valid.

-4-

United States v. Grant, 490 F.3d 627, 632-33 (8th Cir. 2007) (quoting Leon, 468 U.S. at 923). At issue here is the third instance—that is, whether the supporting affidavit was so lacking in indicia of probable cause that no reasonable officer would have relied upon a warrant that was issued based on it.

A review of the affidavit reveals that the law enforcement's primary basis for believing Ralston was involved in Varty's criminal activity was the proximity of their residences located across a road on a rural 9.32-acre parcel of land. Yet, there is an absence of facts indicating the two had a relationship beyond neighbors. The officers did not know whether Ralston or his mother permitted Varty to live in the mobile home on the north side of the road. Neither the officers nor any of the confidential sources observed Varty and Ralston together, nor is there evidence of Varty accessing or entering Ralston's residence. Even though one of the investigators was familiar with Ralston and had known him for several years, he was unable to point to any facts establishing a direct relationship between Ralston and Varty. This Court has previously found that no reasonable officer would believe probable cause was established to search a defendant's home when the affidavit contained no evidence of illegal activity at the defendant's home, the defendant was never seen at the location where marijuana was discovered, and the defendant was not shown to have been associated with past marijuana dealings at a nearby family member's farm. See United States v. Herron, 215 F.3d 812, 813 (8th Cir. 2000).

In addition to the absence of a relationship, the affidavit pointed to no facts indicating there might be stolen property inside Ralston's residence or that Ralston was fencing stolen property for Varty. Rather, the affidavit contained the officer's general opinion that the rural property was ideal to "utilize as a fence to conceal one's person as well as stolen property." Despite the surveillance and information from confidential sources, officers were only able to connect Varty to the southern half of the property where Ralston's house was situated on two occasions–once when the officers saw a UTV they believed had been stolen operating on both sides of the road and then the next morning saw it parked on the south side of the road, and on that same day Varty was seen on the south side of the property walking towards a

vehicle that Varty had been arrested in several weeks earlier. With no evidence that Varty had access to Ralston's residence or facts pointing to a fair probability that Ralston's residence contained stolen property or was being used to fence stolen property, no reasonable officer would have believed the warrant was sufficient to establish probable cause to search Ralston's residence. The circumstances before us are distinguishable from this Court's decision in United States v. Proell, 485 F.3d 427, 431-432 (8th Cir. 2007), where there was evidence that the defendant had access to the two properties sharing a back boundary line, the defendant was observed on the neighboring property, and word throughout the small town was that the defendant had access to "everything" on the two lots.

As noted by both the magistrate judge and the district judge, the officer in the supporting affidavit conflates the terms "property" and "residence" and does not consistently distinguish the single-family home in which Ralston was known to reside from the 9.32-acre property. The lack of clarity tends to overstate the nexus between Ralston's home and the suspected criminal activity. This distinction is significant because when assessing a challenge to the search of a residence, we are to be mindful of the special protection afforded a person's home under the Fourth Amendment. Herron, 215 F.3d at 815. When multiple people have houses on a piece of property, we have explained that "[r]egardless of who actually owned the land [the defendant] lived on, or how many other people resided on the same piece of property, [the defendant] had a socially recognized expectation of privacy in his residence." United States v. Schroeder, 129 F.3d 439, 442 (8th Cir. 1997). In Schroeder, the Court determined the officers did not act reasonably when they assumed the defendant's camper trailer, which was surrounded with foliage, a ditch, a fence, and located on the same parcel identified in the warrant, encompassed "the premises and property, including all buildings and vehicles," mentioned in the warrant. Id. at 442-43. The officers here knew that Ralston and Varty maintained separate residences on the property. Their residences were separated by a road. The officers offered little more than a hunch that Ralston's residence was being used to fence property that Varty was stealing. A reasonable officer would understand that a prerequisite for a search warrant is probable cause, not a mere suspicion or hunch.

Beyond proximity of the residences and law enforcement's opinion that the rural property was suitable for fencing stolen property, the government points to Ralston's criminal history, which includes prior convictions for burglary and theft, past weapons violations, and prior drug convictions, as well as additional facts not contained in the search warrant application. The government asks us to give weight to law enforcement's conclusory assertions that the property had been known for multiple years as a place where stolen property was fenced, Ralston and Varty were unemployed drug users, Ralston had been involved in the sale or distribution of narcotics for many years, and a neighbor had recently reported gunfire in the area.

The officer's meandering into Ralston's past weapons violations, drug use, and drug convictions is unrelated and immaterial to the offenses—burglary and possession/fencing stolen property—that were under investigation in the warrant application. It is axiomatic that the nexus required by the Fourth Amendment is between the contraband being sought and the place being searched. United States v. Keele, 589 F.3d 940, 943 (8th Cir. 2009). Here, the warrant application did not seek evidence of drug possession or distribution of drugs or possession of a firearm by a prohibited person. While the affidavit contained information regarding increased short-term traffic on the property, which the government asserts is indicative of criminal activity, it is unclear from the affidavit whether the increased traffic was on the property in general, was to Varty's mobile home, or was travelling to and from Ralston's residence. The affiant officer subsequently testified that he "believed" the neighbors were referring to both sides of the property and his deputies on night shift had observed traffic "to both sides of the property to some extent." This information led the affiant to believe Ralston was engaged in drug trafficking. Even with the purported clarification, there is nothing specific implicating Ralston's residence as a location where there was a fair probability that stolen tools or other contraband identified in the warrant application would be found. The government's efforts to demonstrate law enforcement officers had an objectively reasonable basis to rely on the search warrant are unavailing.

The issuing judge has been the only judge to find the existence of probable cause to search Ralston's residence. Both the reviewing magistrate judge and the district judge found probable cause to search Ralston's residence lacking. More than 30 years ago, the Court stated that mere association with a known or suspected criminal or the presence in a location known to be involved in criminal activity does not establish probable cause. United States v. Everroad, 704 F.2d 403, 406 (8th Cir. 1983). Armed with only the proximity of residences on rural property, conclusory assertions that lacked a nexus to Ralston's residence or the targeted offenses, and no evidence of a relationship between Ralston and Varty or evidence that Varty had access to Ralston's house, a reasonable officer would not believe there was a sufficient nexus to establish probable cause to search Ralston's residence for evidence related to the burglaries or fencing stolen property. While the affidavit was detailed, focused, and probative as to Varty's criminal activity, it said little about Ralston and lacked any specifics connecting Ralston or his residence to the offenses under investigation. Given the paucity of evidence as to Ralston, law enforcement should have been aware of the affidavit's deficiencies. The additional information not included in the affidavit that consists of conclusory assertions and details unrelated to the offenses under investigation does not cure the deficiencies.

After careful review of the entire record and the parties' arguments, we find the good-faith exception inapplicable under the circumstances of this case.

## III. CONCLUSION

For the foregoing reasons, we remand the case to the district court and direct the court to vacate Ralston's guilty plea and to grant his motion to suppress.

_____