# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 24-2438
_____

United States of America

*Plaintiff - Appellee*

v.

Edwin Edgardo Diaz

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: April 15, 2025
Filed: October 8, 2025

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

Edwin Diaz conditionally pleaded guilty to two counts of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and one count of Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. §§ 922(g)(1), (g)(3) and 924(a)(8). He appeals the denial of his motion to suppress evidence gathered from a search of his car and a warrant

search of his residence, arguing the district court[1] erred because (i) evidence was seized from his car without probable cause or reasonable suspicion, and (ii) the good faith exception to the exclusionary rule does not apply to the evidence seized from his residence pursuant to a warrant affidavit that did not establish a nexus between the drugs to be seized and the home. "We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." United States v. Williams, 131 F.4th 652, 657 (8th Cir. 2025) (quotation omitted). We affirm.

## I. Background

**A. The Truck Search.** Just after midnight on December 31, 2022, Ida County Deputy Jared Clausen was on routine patrol in Ida Grove, Iowa. Driving south on Dawn Street, Deputy Clausen observed a parked Ford Ranger truck with two occupants. The vehicle had only one working headlight and the rear of the truck was sticking out from the curb and impeding traffic. Deputy Clausen passed the truck and turned his patrol car around. He saw that both taillights were broken. Clausen activated the patrol car's red and blue lights and walked to the driver's side of the parked vehicle with his hand on his service weapon. He testified that he stopped to check on the apparent traffic code violations and to check on the welfare of occupants of a car that appeared to be wrecked on a cold winter night.

As he approached the truck, Deputy Clausen smelled a strong marijuana odor that increased when the driver's window was lowered. He told the occupants he stopped to check if they were okay, noted the vehicle was improperly parked, and

---

[1]The Honorable Leonard T. Strand, then Chief Judge of the United States District Court for the Northern District of Iowa, adopting as modified the report and recommendation of the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge for the Northern District of Iowa.

"now smelled weed." He identified the female passenger as Mikaela Breen and the male driver as Diaz. Diaz told Clausen there was no marijuana in the vehicle and that the car had been towed to where it was parked. Clausen testified that he believed this statement was false, given the presence of tire tracks and the fact that towing companies would not leave a car on the side of the street. Breen later told Deputy Clausen that Diaz drove the vehicle to where it was parked.

Clausen learned from dispatch that Diaz's license was suspended and asked Diaz and Breen to exit the vehicle. As they did, he saw Diaz take something from his left pocket and drop it on the truck's floorboard. Diaz denied dropping anything. Deputy Clausen detained Diaz, told Breen to sit on the ground, and said he would search Diaz, Breen, and the truck because he smelled marijuana. Diaz asked if he could give Deputy Clausen the marijuana, indicating it was located in his truck. Clausen read Diaz his rights and radioed for assistance. When other officers arrived, Deputy Clausen observed a baggie with a white crystal substance, later found to be methamphetamine, in the area where he had seen Diaz drop something. Clausen arrested Diaz. Following a thorough search of the truck, officers seized that bag, a methamphetamine pipe, a scale, and marijuana. Diaz and Breen were transported to the Ida County Jail and charged with state drug offenses.

**B. The Home Search.** Around 5:00 a.m. on January 4, 2023, a Casey's gas station employee called law enforcement to report that a female -- later identified as Breen -- appeared to be scared and hiding from someone. Breen told the responding officer that Diaz and his girlfriend, Amy Hartwig, had dropped her off at Casey's after making Breen sign a statement taking responsibility for the items seized during the December 31 truck search. The officer reported the incident to Sac County Deputy Kathryn Stange. After speaking to other law enforcement officers and reviewing Deputy Clausen's December 31 report, Deputy Stange arranged a meeting with Breen at her residence to clarify and corroborate the information she had given the responding officer.

-3-

During the interview, Breen told Deputy Stange that her mother kicked Breen out of her mother's Ida Grove apartment on January 3. Diaz picked Breen up and brought her to an apartment in Odebolt, where she fell asleep. Around 3:00 or 4:00 a.m. on January 4, Diaz woke Breen up and told her they needed to go to a friend's house in Lake View. Hartwig drove the car, Breen sat in the front passenger seat, and Diaz sat in the back. In the vehicle, Diaz first asked why Breen had previously provided law enforcement with information in an unrelated case about another individual. Diaz took Breen's phone, refused to let her exit the vehicle, forced her to sign a document claiming responsibility for the drugs found on December 31, and recorded her signing the note. Breen heard a sound from the backseat she believed came from handcuffs. Diaz made a threat, claiming that while he would not hurt her, others would. After Breen agreed to take responsibility for the drugs found in the December 31 search, Diaz and Hartwig dropped her off at Casey's. Breen showed Deputy Stange messages from Diaz where he told Breen to take responsibility for the items seized in the December 31 search. At the suppression hearing, Deputy Stange testified that Breen's account was "generally consistent" with what she told the responding officer.

Based on Breen's information, Deputy Stange applied for a warrant to search Hartwig and Diaz's Odebolt residence for evidence including drugs and drug paraphernalia. The affidavit in support of the search warrant discussed in detail the January 4 events; Diaz's extensive criminal history that included multiple drug convictions; the December 31 state drug charge and criminal complaint, which stated Diaz possessed 50 grams of methamphetamine, an amount "greater than what would be considered personal use and . . . more consistent with the sale of methamphetamine"; that recent law enforcement investigations indicated that Diaz and Hartwig reside at the home to be searched; and that "controlled substances along with personal documents and valuables are frequently placed in locked containers for safekeeping." Not included was the fact that Breen was charged with Diaz for the December 31 drug prosecution, that Breen was a known drug user, that Deputy

-4-

Stange had been investigating Diaz for three months, and that surveillance of Diaz's residence and controlled purchases implicated Diaz in drug trafficking. An Iowa state court judge approved the search warrant. Sac County deputies executing the warrant found handcuffs, a firearm, ammunition, scales, drug paraphernalia and residue, and suspected drugs.

Diaz was charged with the two counts of conviction on February 16, 2023. On June 16, he filed the motion to suppress, arguing (i) that the December 31 search of his truck violated the Fourth Amendment because the "stop and detention had no basis in reasonable suspicion or probable cause," and (ii) that evidence seized in the search of his home "indicating potential methamphetamine or other contraband was too stale, . . . there was no nexus between the information in the affidavit and the crimes alleged, . . . [and] the affidavit was based almost entirely upon the evidence of one witness to a crime that had nothing to do with methamphetamine trafficking without any corroborating information." Following the August 2 suppression hearing, Diaz filed a motion for Franks review, contending that Deputy Stange omitted material facts in the warrant application with reckless disregard for the truth and critical to the issuing magistrate's probable cause determination.

Consistent with 28 U.S.C. § 636(b)(1), on September 19 the magistrate judge issued a Report and Recommendation that thoroughly recited and reviewed the relevant facts and recommended denying the motion to suppress. The magistrate judge concluded that the Fourth Amendment was not implicated in Deputy Clausen's search of the truck because Clausen did not seize Diaz when he approached the truck to check the occupants' welfare and spoke to Diaz in a friendly and conversational manner. That Deputy Clausen activated the patrol car's red and blue lights did not convert the encounter into a seizure. Moreover, even if there was a Fourth Amendment seizure, the magistrate judge concluded that it was lawful due to Diaz's numerous traffic violations, and the smell of marijuana as he approached the vehicle gave Deputy Clausen probable cause to search the truck. Regarding the subsequent

-5-

warrant search of Diaz's residence, the magistrate judge concluded the warrant affidavit may not have established a sufficient nexus between drugs and Diaz's home, but the <u>Leon</u> good-faith exception applied because it was not entirely unreasonable for an officer to infer that a drug dealer would store contraband at his residence. <u>See United States v. Leon</u>, 468 U.S. 897, 923 (1984). The magistrate judge recommended finding no <u>Franks</u> violation, as there would have been probable cause to search Diaz's home if the warrant affidavit included the omitted information.[2]

Diaz objected to the magistrate judge's conclusions that he was lawfully seized on December 31, that there was probable cause to search the car, and that the <u>Leon</u> good-faith exception applied to the evidence seized in the search of his home. Reviewing *de novo*, the district judge disagreed with portions of the magistrate judge's Report and Recommendation but nonetheless denied Diaz's suppression motion. The court found that "a seizure occurred when Clausen parked behind Diaz, activated his red and blue emergency lights and approached the vehicle with his hand on his service weapon." But the court held that the "seizure was lawful because Clausen had probable cause to conduct a traffic stop." Diaz's broken headlights and improper parking violated several provisions of the Iowa Code. The district judge agreed with the magistrate judge that the odor of marijuana "was sufficient to search the vehicle under the automobile exception to the warrant requirement."

Regarding the warrant to search Diaz's residence, the district court agreed with the magistrate judge that the information contained in the warrant affidavit was not stale and was based on reliable information. It concluded, however, that the "search warrant affidavit did not demonstrate probable cause to search Diaz's residence, as there was not a sufficient nexus" linking the drugs to Diaz's home. Despite the

---

[2]Reviewing for clear error, the district court agreed with the magistrate judge's conclusion that no <u>Franks</u> violation occurred. Diaz did not appeal that determination.

warrant lacking probable cause, the court held that evidence seized from the home should not be suppressed because the good faith exception applied -- under Eighth Circuit precedent, an officer could reasonably infer that a drug dealer would store drugs at his residence.

Following the denial of his suppression motion, Diaz pleaded guilty to all three Counts, reserving his right to appeal the suppression rulings. The district court adopted the Presentence Investigation Report's advisory guidelines sentencing range of 188 to 235 months, varied downward, and sentenced Diaz to 185 months imprisonment. Diaz appeals the district court's denial of his motion to suppress.

## II. Discussion

**A. The Truck Search.** Diaz argues the district court erred in not suppressing evidence found in the warrantless search of his truck because "Clausen seized Diaz with neither probable cause nor reasonable suspicion." The magistrate judge rejected this contention for two reasons, no seizure and sufficient reasonable suspicion to seize Diaz and then probable cause to search the truck. The district judge upheld only the second ruling. There is authority supporting the magistrate judge's conclusion that the encounter between Deputy Clausen and Diaz was not a seizure. See United States v. Clements, 522 F.3d 790, 794-95 (7th Cir.), cert. denied, 555 U.S. 858 (2008); United States v. Dockter, 58 F.3d 1284, 1287 (8th Cir. 1995) (defendant was not seized when an officer "pulled his vehicle behind their parked car and activated his amber warning lights"), cert. denied, 516 U.S. 1122 (1996). But it is an unsettled question. See United States v. Halter, 988 F.3d 1042, 1046 (8th Cir. 2021) ("We question whether Halter was 'seized' for Fourth Amendment purposes when Deputy Richmond simply pulled up behind Halter's parked vehicle, activated his emergency lights for visibility purposes, and approached on foot."). We need not decide it in this case because we agree there was reasonable suspicion justifying Clausen's initial encounter with Diaz even if the encounter was a Fourth Amendment seizure.

If turning on the patrol car lights and approaching Diaz's truck on foot was a seizure, Deputy Clausen needed "only reasonable suspicion -- that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." Williams, 131 F.4th at 657 (quotation omitted). "Any traffic violation, however minor, provides probable cause for a traffic stop." United States v. Virrueta, 121 F.4th 706, 709 (8th Cir. 2024) (quotation omitted). Here, Deputy Clausen testified, and his dash cam footage verified, that he observed multiple traffic violations -- when he first drove by the truck, only one headlight was working and it was parked in a "kinked" manner that impeded traffic and appeared to be wrecked. When he turned around, stopped behind the truck, and approached the vehicle, he observed that both of the truck's taillights were broken. See Iowa Code §§ 321.384 and 321.385 (broken headlights); § 321.387 (rear lamps); § 321.361(1) (when parked, right-hand wheels must be "parallel to and within eighteen inches of the right-hand curb").

Diaz argues the headlight statute exempts parked vehicles, and Clausen did not observe the vehicle being operated. We agree with the district court "it was plausible for Clausen to suspect that Diaz had recently driven the truck." Deputy Clausen did not need to see Diaz violate the headlight statute -- "the requirement of reasonable suspicion is not a requirement of absolute certainty: sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." New Jersey v. T.L.O., 469 U.S. 325, 346 (1985) (cleaned up). Diaz further argues the curb was covered in snow so "Clausen had no way of knowing where the curb ended and whether the parked truck was within 18 inches of the curb." Having reviewed the dash cam footage, we agree with the district court that "Diaz's truck's wheels did not appear to be parallel to and within eighteen inches of the curb." Moreover, even if the back right-hand wheel of Diaz's truck was parallel to and within eighteen inches of the curb, "seizures based on mistakes of fact can be reasonable." United States v. Smith, 137 F.4th 699, 701 (8th Cir. 2025), quoting Heien v. North Carolina, 574 U.S. 54, 61 (2014). Here, body cam and dash cam footage showing the back of Diaz's truck sticking out into the road make any mistake of fact reasonable.

In addition, Deputy Clausen testified that he stopped to check on a car that appeared to be wrecked on a cold, snowy night. The community caretaking exception to the Fourth Amendment warrant requirement "allows officers to respond to potential emergencies if (1) they have a reasonable belief an emergency exists, and (2) their response is carefully tailored to address the emergency." Halter, 988 F.3d at 1046 (8th Cir. 2021); see Caniglia v. Strom, 593 U.S. 194, 199 (2021) (recognizing the community caretaking exception applies to vehicles). Given the condition of the car, the weather, and the time on New Year's Eve, Deputy Clausen reasonably turned on his emergency lights and checked on the truck occupants' welfare.

For these reasons, we agree with the district court that Deputy Clausen had reasonable suspicion to approach Diaz in the parked truck. Clausen testified he smelled marijuana and, having seen recent tire tracks, believed that Diaz lied when he said the truck had been towed to the side of the street. Diaz does not appeal the district court's conclusion that there was then probable cause to search his vehicle. We affirm the denial of his motion to suppress evidence from the truck search.

**B. The Home Search.** Diaz argues the district court erred by applying the Leon good-faith exception and denying suppression of evidence seized in the warrant search of his residence. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. To obtain a valid warrant, Deputy Stange needed "to make a showing to the issuing magistrate of facts sufficient to create a fair probability that evidence of a crime [would] be found in" Diaz's residence. United States v. Saddler, 19 F.4th 1035, 1039 (8th Cir. 2021) (quotation omitted). "[T]here must be evidence of a nexus between the contraband and the place to be searched." United States v. Randle, 39 F.4th 533, 536 (8th Cir. 2022) (quotation omitted).

The district court determined that the warrant lacked probable cause due to an insufficient nexus between the drugs sought and the location to be searched, Diaz's

residence.[3] Though "Clausen found distribution quantities of methamphetamine in Diaz's truck . . . [he] did not discover any materials that would lead to an inference that any manufacturing or distribution was occurring at Diaz's residence." Moreover, Deputy Stange's affidavit did not state her belief that drug traffickers often keep evidence of drug dealing in their residences, which we have held may be sufficient to establish the required nexus. See United States v. Keele, 589 F.3d 940, 944 (8th Cir. 2009); United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994) and cases cited.

Whether Deputy Stange's warrant affidavit provided a sufficient nexus between the drugs and Diaz's home is a close question. There was no specific information linking contraband to Diaz's residence. But the warrant included information regarding Diaz's prior drug crimes, the December 31 state criminal complaint alleging drug possession, and Deputy Stange's statements (i) that she "know[s] that individuals involved with the possession and sales of illegally possessed controlled substances will typically keep paraphernalia and accessories including pipes, baggies, and scales that are used with these substances" and (ii) that "law enforcement investigations within the last three months have indicated that Diaz and Hartwig" reside at the home to be searched.

---

[3]We agree with the district court that the information in the warrant affidavit was not stale. The warrant application thoroughly recited events occurring over a five-day period. Critical information in the affidavit, such as Diaz's state drug offense and alleged false imprisonment of Breen, occurred within five or fewer days of the warrant application. And Diaz was being investigated for drug trafficking. See United States v. Carnahan, 684 F.3d 732, 736 (8th Cir.) ("[I]n investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale."), cert. denied, 568 U.S. 1016 (2012).

We need not decide this question. While the "ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression . . . . [t]he exclusionary rule does not apply when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Saddler, 19 F.4th at 1040 (quotations omitted). This good faith exception does not apply when an officer executes "a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*." Leon, 468 U.S. at 923 (emphasis added) (quotation omitted). This is an objective inquiry -- whether "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23. "'Entirely unreasonable' is not a phrase often used by the Supreme Court [and is a] particularly strong choice of words." United States v. Carpenter, 341 F.3d 666, 670 (8th Cir. 2003). "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916.

"We have applied the good-faith exception in controlled-substance cases even when an affidavit did not establish a nexus between the search location and the suspected contraband." United States v. Mayweather, 993 F.3d 1035, 1041 (8th Cir. 2021); see Randle, 39 F.4th at 537. It is not "entirely unreasonable" for an officer to believe that a suspected drug trafficker would store "contraband in a safe, accessible location such as his or her residence." Carpenter, 341 F.3d at 671. Here, reliance on the search warrant was not unreasonable in light of information in the affidavit that Diaz had multiple convictions for controlled substance offenses and had just been charged with possession of a controlled substance after being found with 50 grams of methamphetamine -- a distribution quantity. The information in the affidavit gave the issuing magistrate probable cause to believe that Diaz had been involved in recent drug trafficking, creating an inference that drug-related contraband would be found in his home. The lack of a boilerplate statement in the warrant affidavit that drug

-11-

dealers store contraband in their home was at most a "technical legal deficiency." Randle, 39 F.4th at 537 (quotation omitted).

In support of his argument the Leon exception should not apply, Diaz relies on United States v. Ralston, 88 F.4th 776 (8th Cir. 2023). In that case, officers investigating a string of burglaries believed that their prime suspect was "residing in -- or at least 'frequenting'" -- a mobile home he owned located on property that included a single-family home occupied by Ralston. A warrant authorized search not only of the suspect's mobile home but also Ralston's single-family home. We reversed denial of Ralston's motion to suppress evidence seized from his home, concluding the Leon exception did not apply because the warrant affidavit contained no evidence connecting the suspect's criminal activities to Ralston's single-family home, and no evidence that stolen property would be found there. "[A] reasonable officer would not believe there was a sufficient nexus to establish probable cause to search Ralston's residence for evidence related to the burglaries or fencing stolen property." Id. at 781.

As in Carpenter, we conclude that Ralston is distinguishable because the "affidavit at issue in that case was uniquely infirm in a manner dissimilar from the present affidavit." 341 F.3d at 672. "[T]he problem [in Ralston] was the affidavits simply did not say very much about" Ralston or his single-family home and offered no evidence connecting the suspect to that home. 341 F.3d at 673. In addition, the warrant application to search Ralston's single-family home "did not seek evidence of drug possession or distribution of drugs." 88 F.4th 776, 780-81.

"In assessing the objective reasonableness of a police officer's belief in the validity of a warrant, we look to the totality of the circumstances, including any information known to the officer but not presented to the issuing judge." Saddler, 19 F.4th at 1040 (quotation omitted). Deputy Stange testified, but omitted from the affidavit, that she had been investigating Diaz for three months, and was aware of his

other recent drug trafficking activity. Considering the information Deputy Stange knew but did not present to the issuing magistrate, and the inferences that could reasonably be drawn from that information, the district court did not err in holding that the Leon good faith exception applied and denying the motion to suppress evidence seized in the warrant search of the home.

The judgment of the district court is affirmed.

_____